444

[Nos. 44958-7-II; 44965-0-II.   Division Two.   March 17, 2015.]

THE STATE OF WASHINGTON, *Respondent*, v. ALLEN ENGLUND, *Appellant*.

446

*John A. Hays*, for appellant.

*Jon Tunheim, Prosecuting Attorney*, and *Carol L. La Verne, Deputy*, for respondent.

¶1 MELNICK, J. — Allen Englund appeals his convictions of two counts of assault in the second degree while armed with a firearm and three counts of unlawful possession of a firearm in the second degree. Englund argues that we should vacate his convictions and remand for a new trial because the trial court abused its discretion by denying Englund's requests to proceed as a self-represented litigant (SRL), failed to bring Englund to trial within the time for trial rule, and denied Englund his right to be present at every critical stage of the proceedings. Englund also makes several assertions in his statement of additional grounds (SAG). In the published portion of the opinion, we hold that the trial court did not abuse its discretion when it denied Englund's requests to represent himself. In the unpublished portion of the opinion, we hold that the trial court did not violate Englund's right to a timely trial and it did not violate Englund's right to be present at every critical stage of the proceedings. We also reject Englund's SAG assertions. We affirm Englund's convictions.

## FACTS

I. Substantive Facts[1]

### A. Englund's Criminal History

¶2 In 1976, Englund pleaded guilty to burglary in the second degree in Lewis County Superior Court. Because of the conviction, Englund could not legally possess a firearm. On August 19, 2009, a jury found Englund guilty of unlawful possession of a firearm in the first degree in Thurston County Superior Court. The judgment and sentence specifically informed Englund that he could not legally possess a firearm unless a court of record restored his right to do so. On October 13, 2012 and December 16, 2012, Englund could not legally possess any firearm.

### B. Facts Relating to October 2012 Case

¶3 Englund owned property with two travel trailers on it. In October 2012, Washington Department of Fish and Wildlife Officer Chris Zuchlewski stopped at Englund's property to investigate two unattended fishing poles. Following the investigation, Zuchlewski ran a records check on the license numbers of the vehicles on the property. From the records check, Zuchlewski determined that because Englund had felony convictions, he could not legally possess firearms.

¶4 Later that same day, Zuchlewski drove past Englund's property again and observed Englund holding a rifle with a scope. Zuchlewski and a fellow officer entered Englund's property and placed him under arrest. Following the arrest, Zuchlewski, accompanied by Englund and with his consent, entered one of the trailers on the property and, from under a

---

[1] The State charged Englund in two separate informations. One related to the October 2012 events; the other related to the December 2012 events. The trial court consolidated the cause numbers for trial.

mattress, seized a loaded .22 caliber rifle equipped with a scope.

### C. Facts Relating to December 2012 Case

¶5 Mark Christensen and Arthur Parrish are friends. They know Englund. Christensen drove by Englund's residence every time he drove to Parrish's residence. In mid-December 2012, Christensen and Parrish drove onto Englund's property in Christensen's vehicle and struck the front fender of Englund's vehicle. Englund believed the collision was intentional, and he was fearful that Christensen's truck might strike his trailer or injure him. Englund wanted to retaliate against Christensen and Parrish.

¶6 Shortly thereafter, Christensen drove his vehicle home from Parrish's residence. While passing Englund's property, he heard a loud boom that sounded like a shotgun blast. Christensen did not stop or examine his vehicle until the next day when he observed what appeared to be shotgun pellets embedded in the driver's side and rear tire of the vehicle. Later that same day, Englund, while on his property, aimed and fired a firearm at a vehicle containing Christensen and Parrish. Christensen and Parrish feared for their lives, and once reaching Christensen's residence, they called law enforcement.

¶7 After the call, sheriff's deputies arrested Englund on his property. In a search incident to arrest, deputies seized a box of 20-gauge shotgun shells from Englund's pocket. The shot found in the 20-gauge shells was size 8, a form of birdshot capable of injuring a human being. In a search pursuant to a warrant, deputies seized a loaded 20-gauge bolt action shotgun from under a blanket in a trailer on Englund's property. Additionally, deputies seized a loaded .22 caliber rifle from Englund's other trailer.

II. Procedural History

¶8 On December 26, 2012, Englund appeared for arraignment and pleaded not guilty to each charge.[2] The trial court appointed a lawyer for Englund and set a February 19, 2013 trial date. On January 24, the trial court allowed Englund's lawyer to withdraw for good cause and ordered the Office of Assigned Counsel to appoint a new lawyer for Englund as soon as possible. On January 28, the trial court appointed new counsel for Englund. Two days later, the trial court allowed the new lawyer to withdraw at Englund's request. Englund moved to represent himself. Regarding self-representation, the trial court engaged in a colloquy with Englund:

> THE COURT: And is it true that you wish to represent yourself?
>
> ENGLUND: If I have to.
>
> THE COURT: If you have to?
>
> ENGLUND: Yeah.
>
> THE COURT: Are you making a request to this court that you represent yourself?
>
> ENGLUND: Yeah.

Report of Proceedings (RP) (Jan. 30, 2013) at 5. The trial court then entered an order requiring Englund to file a written motion to represent himself. Englund's former lawyer expressed concern that the current February 19 trial date would not allow adequate preparation time for a new lawyer. The State agreed. The trial court engaged in the following colloquy with Englund:

> THE COURT: Thank you. And I believe—correct me if I'm wrong, Mr. Englund. But I believe the last time that you were before the court asking—or agreeing with the motion of counsel to withdraw from your case, you understood that that may very well mean an extension of dates, including the trial date; right?

---

[2] Englund was in custody only for the charges related to the December 2012 case.

ENGLUND: No.

THE COURT: I'm sorry?

ENGLUND: What would you mean an extension? No. What's that?

THE COURT: You understood that your agreement with the request to allow your counsel to withdraw may mean that the trial date would continue out further than when it currently is.

ENGLUND: If it has to be—a speedy trial is 60 days.

THE COURT: I'm sorry. I can't hear you.

ENGLUND: It should still be a fast, speedy trial, 60 days.

THE COURT: So you are not in agreement with the continuation of the trial?

ENGLUND: No.

THE COURT: You are not?

ENGLUND: No.

RP (Jan. 30, 2013) at 8-9. Because a determination still needed to be made concerning Englund's legal representation, the trial court found good cause to continue the jury trial in the December 2012 case to the week of March 11, 2013.

¶9 The trial court set a February 12 status review hearing regarding counsel. Englund appeared at the hearing and again said he wanted to represent himself.[3] Englund had not yet filed a written motion to represent himself. The trial court engaged in a colloquy with Englund, asking him if he understood the nature of all the charges against him.[4] Englund said yes. However, Englund interjected throughout the colloquy that he had "gun rights." RP (Feb. 12, 2013) at 7. Additionally, the trial court asked Englund if he was familiar with the rules of evidence and criminal procedure:

---

[3] The record shows a lawyer appeared with Englund at this hearing. However, the lawyer said he did not represent Englund.

[4] At this point, the charges arising from both the October 2012 and December 2012 incidents were discussed.

452

THE COURT: Are you familiar with the rules of evidence?

ENGLUND: Yes.

THE COURT: How are you familiar with the rules of evidence?

ENGLUND: The evidence ain't against me. It's the ones that made the assault, not me.

. . . .

THE COURT: Are you familiar with the rules of criminal procedure?

ENGLUND: Yeah.

THE COURT: And how are you familiar with the rules of criminal procedure?

ENGLUND: Because I didn't do nothing wrong. I ain't the type to go to somebody else's place and step out of line.

. . . .

THE COURT: Do you have a legal theory you wish to argue to the [c]ourt that you believe your lawyer would not argue on your behalf?

ENGLUND: No.

. . . .

THE COURT: At this point, I need to advise you that, in the [c]ourt's opinion, you would be far better served if you were defended by a trained lawyer than representing yourself. It's unwise to represent yourself. You face extremely stiff penalties if, in fact, you are found guilty. You are not familiar with the law.

RP (Feb. 12, 2013) at 9-11. The trial court also advised Englund he could not argue at trial that he had the right to possess a firearm. The trial court entered a written order denying Englund's request to represent himself. Based on its colloquy with Englund, the trial court found that Englund "would not have the capacity to understand and follow the procedural rules in this matter and would thereby be unable to provide for his defense." Clerk's Papers (CP) at 52. The trial court ordered the Office of Assigned Counsel to appoint a lawyer to represent Englund.

¶10 Eight days later, at a previously set review hearing, Englund's new appointed lawyer appeared but Englund was not transported to the courtroom. His lawyer presented the trial court with a stipulated competency evaluation order. The court signed it. Because Englund refused to cooperate with a competency evaluation at the jail, the trial court subsequently entered an amended order for the evaluation to occur at Western State Hospital.

¶11 On May 2, the trial court found Englund legally competent to stand trial. At that time, the trial court set a new trial date for May 28. During the hearing, Englund's lawyer advised the court that Englund did not believe she represented him. Englund addressed the court:

> THE COURT: . . . Mr. Englund, you wish to address the court?
>
> ENGLUND: What do you mean?
>
> THE COURT: Do you have a question?
>
> ENGLUND: Yeah. You're sitting there trying to put me up for trial, and it's way past the 60-day trial, and I'm not the one that made this all (indiscernible). So I didn't go to somebody else's place and assault them at their place.

RP (May 2, 2013) at 5.

¶12 On May 13, Englund's lawyer submitted a written motion for reconsideration of the February 12, 2013 order denying Englund's motion to represent himself. She further moved for an order to allow Englund to represent himself. Accompanying the motion was the lawyer's declaration in which she outlined Englund's intent to not cooperate in any way with assigned counsel. She also outlined the defenses Englund planned to raise if permitted to proceed as an SRL. At the same time, the lawyer provided Englund with a three-page letter containing relevant legal research and an analysis of his case. She offered to provide assistance to Englund in the capacity of standby counsel.

¶13 Three days later, the trial court had another hearing and allowed Englund to address the court. The trial court did not, however, engage in further colloquy with Englund,

noting that it did not have the transcript from the colloquy on February 12, 2013. In its written order, the trial court denied Englund's motion for reconsideration on the grounds that it was not filed within 10 days of the entry of the order. Additionally on that day, the trial court consolidated the October 2012 and December 2012 causes for trial.

¶14 On May 24, the State amended the charges in both informations to unlawful possession of a firearm in the second degree, two counts of assault in the second degree, and two counts of unlawful possession of a firearm in the second degree. After his arraignment, Englund, by and through his lawyer, filed a written waiver of a jury trial. On May 29, 2013, the trial court held a bench trial and found Englund guilty of all counts. The trial court entered separate judgments and sentences for each cause.

¶15 Englund appeals his convictions under both cause numbers. We consolidated the cases on appeal.

## ANALYSIS

I. MOTIONS FOR SELF-REPRESENTATION

■■ ¶16 We review a trial court's denial of the right to represent oneself for an abuse of discretion. *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 667, 260 P.3d 874 (2011). The "ad hoc," fact-specific analysis of waiver of counsel questions is best assigned to the discretion of the trial court. *State v. Hahn*, 106 Wn.2d 885, 900, 726 P.2d 25 (1986). A trial court abuses its discretion if its "decision is manifestly unreasonable or 'rests on facts unsupported in the record or was reached by applying the wrong legal standard.' " *State v. Madsen*, 168 Wn.2d 496, 504, 229 P.3d 714 (2010) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).[5]

---

[5] Although the dissent recognizes these standards of review, it instead reviews the record de novo, interprets the facts de novo, and fails to give deference to the trial court judge who communicated with and observed Englund's demeanor as well as his verbal and nonverbal skills.

¶17 Article I, section 22 of the Washington Constitution[6] explicitly guarantees criminal defendants the right to self-representation. *Madsen*, 168 Wn.2d at 503. The Sixth Amendment to the United States Constitution implicitly guarantees this right. *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Courts regard this right as "so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *Madsen*, 168 Wn.2d at 503. Improper denial of the right to represent oneself requires reversal regardless of whether prejudice results. *Madsen*, 168 Wn.2d at 503.

¶18 Englund made three separate motions to proceed as an SRL. Timeliness of this type of motion is determined on a continuum. *State v. Barker*, 75 Wn. App. 236, 241, 881 P.2d 1051 (1994). When a trial court delays ruling on the motion but is put on notice of a defendant's desire to proceed as an SRL, the timeliness of the request is measured from the date of the initial request. *State v. Breedlove*, 79 Wn. App. 101, 109, 900 P.2d 586 (1995). Thus, the timeliness of Englund's request to represent himself is measured from the date of his first request: January 30, 2013. However, we examine each motion separately and independently. *Madsen*, 168 Wn.2d at 505. We hold that the trial court did not improperly deny Englund's right to self-representation.

A. First Motion

¶19 Englund argues that the trial court abused its discretion by requiring him to file a written motion to represent himself. We disagree. At the hearing, Englund clearly indicated that he wanted to represent himself. In response, the trial court ordered Englund to file a written motion. Englund argues this directive is a denial of his request. On the contrary, the trial court did not deny Eng-

---

[6] "[T]he accused shall have the right to appear and defend in person."

lund's request, it merely deferred ruling until the motion was properly before the court.

¶20 Englund further argues that the trial court abused its discretion by "failing to exercise it." Appellant's Br. at 21. Englund made his request to be an SRL in the midst of his counsel's motion to withdraw. A trial court must be allowed the discretion to manage its own affairs. *Madsen*, 168 Wn.2d at 506. When a trial court is reasonably unprepared to immediately consider a motion, it properly exercises discretion by delaying its ruling. *Madsen*, 168 Wn.2d at 506. Here, the trial court had no notice of the motion and required more time to consider it. The trial court did not abuse its discretion.

## B. Second Motion

¶21 After engaging in a colloquy with Englund, the trial court found that Englund lacked the capacity to aid in his own defense and denied the request to proceed as an SRL. Englund argues that capacity is not a criterion for the trial court's consideration. We hold that the trial court properly considered Englund's capacity and it is a proper ground the trial court can consider to deny a defendant SRL status. *See Rhome*, 172 Wn.2d at 659-60.

¶22 The right to self-representation is not self-executing. *State v. Modica*, 136 Wn. App. 434, 441, 149 P.3d 446 (2006), *aff'd*, 164 Wn.2d 83, 186 P.3d 1062 (2008). Although the trial court must honor a properly made request for self-representation, a trial court must also indulge in " 'every reasonable presumption against a defendant's waiver of his or her right to counsel.' " *Madsen*, 168 Wn.2d at 504 (internal quotation marks omitted) (quoting *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999)). "The grounds that allow a court to deny a defendant the right to self-representation are limited to a finding that the defendant's request is equivocal, untimely, involuntary, or made without a general understanding of the consequences." *Madsen*, 168 Wn.2d at 504-05. Such a finding

must be based on an "identifiable fact." *Madsen*, 168 Wn.2d at 505.

¶23 States may constitutionally deny a defendant SRL status " 'on the ground that [he] lacks the mental capacity to conduct his trial defense.' " *Rhome*, 172 Wn.2d at 660 (alteration in original) (quoting *Indiana v. Edwards*, 554 U.S. 164, 174, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008)). Therefore, trial courts may limit the right to self-representation when there is a question about the defendant's competency to act as his own counsel. *Rhome*, 172 Wn.2d at 661-62. Additionally, the state constitutional right to self-representation "may not properly be construed as an absolute right in all cases." *State v. Kolocotronis*, 73 Wn.2d 92, 98, 436 P.2d 774 (1968).

¶24 Competency to stand trial "does not automatically equate to a right to self-representation" because the standard for determining competency to stand trial assumes the defendant will *assist* in his defense, not conduct his defense." *Rhome*, 172 Wn.2d at 660 (citing *Edwards*, 554 U.S. at 174-75). Self-representation undercuts the right to a fair trial when the defendant's lack of capacity to conduct a defense threatens an improper conviction. *Edwards*, 554 U.S. at 176-77. Here, Englund clearly demonstrated a lack of capacity to conduct a defense. When asked why he wanted to proceed as an SRL, Englund could not articulate why he did not want a lawyer to represent him. Additionally, Englund was unresponsive to the trial court's inquiry into his familiarity with the rules of evidence and criminal procedure.

¶25 The trial court correctly found that Englund lacked capacity to aid in his own defense. CP at 52. Taken as a whole, the record of this hearing contains sufficient support for the trial court's finding. We defer to the trial court's finding because it had the opportunity to observe and consider Englund's demeanor and nonverbal conduct, as well as his verbal responses during the colloquy. *See State v. Floyd*, 178 Wn. App. 402, 410, 316 P.3d 1091 (2013),

*review denied*, 180 Wn.2d 1005, 321 P.3d 1206 (2014); *State
v. Read*, 163 Wn. App. 853, 864, 261 P.3d 207 (2011).
Englund could not understand the very basic questions the
trial court posed. As an example, Englund's statements in
response to the trial court's inquiry about whether he
understood the nature of the charges against him illustrate
unresponsiveness:

> THE COURT: And under case number 12-1-01752-6, do you
> understand that you are charged with one count of unlawful
> possession of a firearm in the second degree?
>
> ENGLUND: I have gun rights.
>
> THE COURT: I'm asking if you understand that in 12-1-
> -01752-6, that you are charged with one count of unlawful
> possession of a firearm in the second degree. Do you under-
> stand that is the charge before the [c]ourt?
>
> ENGLUND: Yeah, but you're talking around—I have gun
> rights.

RP (Feb. 12, 2013) at 6. Englund remained so focused on his
belief that he had a right to possess a firearm that he did
not reply to the trial court's questions with relevant an-
swers. This behavior continued throughout the remainder
of the colloquy. Substantial evidence supports the trial
court's ruling that Englund lacked capacity to aid in his
own defense.

¶26 A trial court may not deny a motion for self-repre-
sentation based on grounds that it would be "detrimental to
the defendant's ability to present his case" or concerns that
proceedings would be less efficient and orderly. *Madsen*,
168 Wn.2d at 505. A defendant's "unfamiliar[ity] with legal
rules" does not justify a trial court's denial of the right to
proceed as an SRL. *Madsen*, 168 Wn.2d at 509. "A court may
impose lesser sanctions for failure to adhere to proper
procedures, but 'must not sacrifice constitutional rights on
the altar of efficiency.'" *Floyd*, 178 Wn. App. at 409 (quoting
*Madsen*, 168 Wn.2d at 509). Here, although the trial court
noted that Englund would be better served if represented

by a lawyer and that Englund is not familiar with the law, those statements are most logically read as factors that contributed to the trial court's conclusive finding that Englund lacked capacity to provide for his own defense. Therefore, the trial court's finding was not based on the improper legal standard that Englund is unfamiliar with legal rules. Rather, by explicitly finding that Englund lacked capacity, the trial court properly exercised its discretion to deny Englund's motion to proceed as an SRL.

### C. Third Motion

¶27 Englund argues that because he was found competent to stand trial, the trial court abused its discretion by refusing to engage in further colloquy with Englund and by refusing to consider his renewed request to represent himself at the hearing on May 16, 2013. Englund's request took the form of a motion for reconsideration. The grant or denial of a motion for reconsideration is within the sound discretion of the trial court. *Lilly v. Lynch*, 88 Wn. App. 306, 321, 945 P.2d 727 (1997). As such, it will be overturned only upon an abuse of discretion. *Lilly*, 88 Wn. App. at 321.

¶28 Englund incorrectly equates competency to stand trial with a right to self-representation. Appellant's Br. at 26. As discussed above, the two are not the same. *Rhome*, 172 Wn.2d at 660. "A trial court may consider a defendant's mental health history and status when competency has been questioned, even where the defendant has been found competent to stand trial." *Rhome*, 172 Wn.2d at 667. Here, the trial court relied on all of the information it had regarding the defendant's mental health history, along with its own observations. None of the information evidences the trial court abused its discretion. In addition, the trial court relied on CR 59(b) and found that the motion for reconsideration was untimely. The trial court did not abuse its discretion by relying on its previous encounters with Englund to deny the motion for self-representation and by

refusing to engage in further colloquy with Englund. We affirm the trial court.

¶29 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J., concurs.

¶30 MAXA, J. (dissenting) — I agree with the majority's decisions regarding Allen Englund's time for trial and right to be present arguments, and with the majority's rejection of Englund's statement of additional grounds (SAG) assertions. However, I dissent because the majority erred in concluding that the trial court properly denied Englund's request to represent himself at trial.

¶31 After engaging in a colloquy with Englund, the trial court concluded as follows:

> At this point, I need to advise you that, in the Court's opinion, you would be far better served if you were defended by a trained lawyer than representing yourself. It's unwise to represent yourself. You face extremely stiff penalties if, in fact, you are found guilty. You are not familiar with the law.
>
> . . . You clearly don't know the rules of evidence based upon the statements you made to the Court. It does not appear that you know the rules of criminal procedure, and because you're facing such a stiff penalty, it appears that you would be better served by being represented by a lawyer.
>
> . . . I do not find that you have the ability to represent yourself in this matter. I'm denying your right to represent yourself.

Report of Proceedings (RP) (Feb. 12, 2013) at 11-12. The trial court then entered a handwritten order denying defendant's motion to represent himself, which contained a single finding: "the defendant would not have the capacity to understand and follow the procedural rules in this mat-

ter and would thereby be unable to provide for his defense." Clerk's Papers (CP) at 52.

¶32 It is clear from the oral comments and implied by the written order that the trial court concluded that Englund did not have the *ability* to effectively represent himself. As the majority recognizes, this is not a proper basis for denying a defendant's constitutional right to defend himself. But the majority interprets the written order as a finding that Englund lacked the *mental capacity* to represent himself. Even if the trial court's order could be interpreted this way, the record does not support such a finding.

### 1. Defendant's Ability to Represent Himself

¶33 The trial court's oral conclusion that Englund would be "better served," RP (Feb. 12, 2013) at 11, by a lawyer's representation is an improper basis for denying a defendant's constitutional right to represent himself. Our Supreme Court in *State v. Madsen* emphasized that "[a] court may not deny a motion for self-representation based on grounds that self-representation would be detrimental to the defendant's ability to present his case." 168 Wn.2d 496, 505, 229 P.3d 714 (2010).

¶34 Similarly, the trial court's statement that Englund was not familiar with the rules of evidence or criminal procedure is not a proper basis for denying a defendant's constitutional right to represent himself. The court in *Madsen* stated that a trial court "may not deny pro se status merely because the defendant is unfamiliar with legal rules." *Id.* at 509. This statement makes it clear that whether or not a defendant is familiar with legal rules is not material to addressing a request for self-representation. *Id.* The court in *In re Personal Restraint of Rhome* further stated that the trial court may not consider the defendant's skill and judgment. 172 Wn.2d 654, 663, 260 P.3d 874 (2011).

¶35 Finally, the record shows that Englund was stubborn and unresponsive when responding to the trial court's

questions about his request to represent himself. However, the fact that a defendant's behavior impedes the orderly administration of justice is not a sufficient basis for denying a defendant's request to represent himself. *Madsen*, 168 Wn.2d at 509. As the majority recognizes, "Courts must not sacrifice constitutional rights on the altar of efficiency." *Id.* And the fact that the defendant is "obnoxious" also is not a proper basis for denying self-representation. *Id.*

¶36 In summary, a defendant's *ability* to represent himself is irrelevant in addressing a motion for self-representation. As long as the defendant's waiver of his constitutional right to counsel is knowing, voluntary, and intelligent, *id.* at 504-05, a defendant is free to exercise his constitutional right to represent himself even if exercising that right is not in his best interests.

## 2. Defendant's Mental Capacity to Represent Himself

¶37 On the other hand, as the majority opinion points out, a finding that a defendant is not mentally competent to represent himself is a proper ground for denying a request for self-representation. *Rhome*, 172 Wn.2d at 659-60, 669. The question is whether the defendant " 'lacks the mental capacity to conduct his trial defense.' " *Id.* at 660 (quoting *Indiana v. Edwards*, 554 U.S. 164, 174, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008)).

¶38 Here, the trial court did not find that Englund lacked the mental capacity to conduct his trial defense. Instead, the trial court found that Englund "would not have the capacity to understand and follow the procedural rules in this matter." CP at 52. The majority opinion apparently concludes that this finding is equivalent to a finding on mental incapacity, and that the record supports this finding. I disagree.

¶39 The majority points to three factors that it claims support the trial court's conclusion that Englund lacked the mental capacity to represent himself. First, the majority asserts that "Englund could not understand the very basic

questions the trial court posed." Majority at 458. As an example, the majority points to Englund's unresponsiveness when the trial court asked questions about self-representation and the fact that he remained focused on his belief that he had a right to possess a firearm. However, this portion of the record does not suggest that Englund did not understand the trial court's questions. The record shows only that he did not *want* to respond, and instead wanted to talk about his gun rights. The fact that a defendant fails to respond to a trial court's questions, is fixated on an issue that he wants to address, or is stubborn or even obnoxious provides no evidence that he lacks the mental capacity to represent himself.

¶40 Second, the majority states that Englund was unable to articulate why he did not want a lawyer to represent him. The majority does not cite any authority for the proposition that a defendant's failure to articulate why he wants to exercise his constitutional right of self-representation is evidence that he lacks the mental capacity to represent himself. A defendant has a constitutional right to self-representation, whether or not he can articulate a reason.

¶41 Third, the majority relies on the fact that Englund was unresponsive to the trial court's inquiry into his familiarity with the rules of evidence and criminal procedure. However, once again the record indicates that Englund did not respond because he did not want to, not that he lacked the mental capacity to respond. And a defendant's unfamiliarity with legal rules does not necessarily suggest that he lacks the *mental capacity* to represent himself.

¶42 I agree that a defendant's constitutional right to represent himself is not absolute. *Madsen*, 168 Wn.2d at 504. I also agree that a trial court generally has discretion to deny a defendant's request for self-representation. *Id.* However, a trial court abuses its discretion when it denies a defendant's request to represent himself based on a finding

that the defendant lacks the mental capacity to represent himself that has no support in the record.[7] The trial court abused its discretion here.

¶43 It is hard to disagree with the trial court's conclusion that Englund would be better served by a lawyer's representation. However, because there is no evidence that Englund did not have the mental capacity to represent himself, the trial court was required to allow him to exercise his constitutional right of self-representation, whether foolish or not. I believe that the trial court erred in interfering with Englund's right to represent himself. Accordingly, I would reverse and remand for a new trial.

Review denied at 183 Wn.2d 1011 (2015).

---

[7] I recognize the trial court's unique opportunity to observe and consider a defendant's demeanor and nonverbal conduct in assessing the defendant's request to represent himself. However, here nothing *in the record* suggested that the defendant did not have the mental capacity to conduct his own defense.