## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46758-5-II |
| Respondent, | |
| v. | |
| ALLIXZANDER DEVELL HARRIS, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Allixzander Devell Harris appeals his sentence and convictions for six counts of promoting commercial sexual abuse of a minor with multiple aggravating factors on those counts, one count of tampering with a witness, and one count of promoting prostitution in the second degree. He makes numerous arguments that his exceptional sentence should be reversed because it was based on the rapid recidivism aggravating factor. Because the jury found other aggravating factors existed and the trial court said it would have imposed the same exceptional sentence based on the presence of only one, we do not consider his sentencing arguments. In addition, we reject Harris's argument that the trial court violated his right to be present and his right to self-representation. Harris also challenges the imposition of his legal financial obligations (LFOs). In a statement of additional grounds (SAG), Harris asserts that he received ineffective assistance of counsel. We affirm, but remand the case to the trial court to conduct an individualized inquiry on Harris's ability to pay discretionary LFOs.

FACTS

In late 2012, S.D. and K.H., both minors, became homeless. They asked Harris about becoming prostitutes because they needed money for a place to stay. He took S.D. and K.H. to meet a woman, Trista, who taught them about prostitution. Trista helped them find their first client. S.D. and K.H. were instructed to go into a nearby room where they performed oral intercourse on the client. K.H. also had penile-vaginal intercourse with the client. As payment, they received money, marijuana, and a marijuana pipe from the client. K.H. was arrested shortly thereafter, but after her release, she continued prostituting.

Harris took pictures of S.D. and created Backpage.com[1] advertisements for K.H. and S.D. He received phone calls from the advertisements on his cell phone. Harris, S.D., and K.H. responded to inquiries by text message. Harris made the arrangements for S.D. and K.H. to meet clients. Harris drove S.D. and K.H. to different locations to meet new clients. He took all of the money S.D. and K.H. made.

The State charged Harris with six counts of promoting commercial sexual abuse of a minor with aggravating factors (counts I through VI), one count of tampering with a witness (count VII), one count of promoting prostitution in the second degree (count VIII), and possession of depictions of a minor engaged in sexually explicit conduct in the second degree (count IX).[2] Counts I through VI included the aggravating factors of ongoing pattern of sexual abuse[3] and victimization of

---

[1] Backpage.com is a classified advertising website where escorts advertise their services. Advertisers include phone numbers in their advertisements that interested clients can call or text message.

[2] RCW 9.68A.101; RCW 9A.72.120; RCW 9A.88.080; RCW 9.68A.070(2); and RCW 9.68A.011(4)(f), (g).

[3] RCW 9.94A.535(3)(g).

homeless youth.[4]  Counts I and II also included aggravating factors of multiple unpunished current offenses[5] and rapid recidivism.[6]  The trial court dismissed count IX, possession of depictions of minors engaged in sexually explicit conduct, during trial.  Harris plead not guilty to all charges.

I.      PROCEDURAL HISTORY

On April 17, 2013, Harris filed a motion for his appointed lawyer to withdraw because he would not file motions as Harris instructed.[7]  The trial court denied the motion.  On May 15, Harris again moved for his lawyer's withdrawal, telling the court that his lawyer was harassing him and threatening him.  The trial court again denied the motion.  On May 23, Harris's lawyer told the trial court that Harris filed a bar complaint against him and that Harris refused to talk to him.  The trial court again refused to appoint new counsel.  On June 6, the trial court granted the lawyer's motion to withdraw based on a breakdown of communication with Harris.

The trial court appointed a new lawyer and granted a continuance to allow him to prepare for trial.  Harris objected to the continuance "to preserve any speedy trial issues."  Report of Proceedings RP (June 21, 2013) at 8.  On August 1, the trial court granted the second lawyer's motion to withdraw because of a conflict with Harris.  The trial court appointed Harris a third lawyer.

---

[4] RCW 9.94A.535(3)(j).  This statute has been amended, however, the amendments do not affect the provisions we utilize for our analysis.

[5] RCW 9.94A.535(2)(c).

[6] RCW 9.94A.535(3)(t).

[7] Harris said, "My motion is to withdraw defense counsel."  Report of Proceedings (RP) (Apr. 17, 2013) at 7.  For consistency, we refer to this motion and other similar motions as motions to withdraw.

On October 4, Harris indicated to the trial court that he wanted to file a motion to withdraw counsel and he was not speaking to his lawyer. The trial court explained to Harris that he must bring motions through his lawyer. Harris told the trial court that the third lawyer was not his lawyer. Harris continued to interrupt the trial court at the hearing:

> THE COURT: No. No. Sir, one more word and you are coming out of this jail [sic] right now. Look at me. He is your attorney until he has been withdrawn. I haven't done that yet, and I am not entertaining a motion to his withdrawal. That is not what we are here for.
> [HARRIS]: I am here against the law.
> THE COURT: One more word and you are out of here. We are here for omnibus only. If you have a separate motion to make, you note it up through your attorney. You have been here long enough you know how.
> [HARRIS]: I am—
> THE COURT: Not another word.
> . . . .
> [HARRIS]: You can take me back, but I am—
> THE COURT: Take him back now. Take him out.
> [HARRIS]: Take me back, but I never signed that order, and you cannot proceed with that because I never gave him prior consent, so all that should be on record.

RP (Oct. 4, 2013) at 5. After Harris was removed from the courtroom, the lawyer explained this exchange was the first he heard of Harris's displeasure, and that Harris consistently contacted his office several times a day. The trial court continued to conduct the hearing and signed a stipulation and protection order based on an agreement between the State and Harris's lawyer. The order related to "the use and distribution of image and audio evidence from the DVD recording . . . provided to the defense in the course of discovery." Clerk's Papers (CP) at 462. It pertained to interviews with children and "suspected child pornography." CP at 462.

On November 4, Harris's lawyer moved to continue the trial date because he had health issues. The trial court granted the continuance. Eight days later, Harris personally filed a handwritten objection to the continuance.

On January 14, 2014, Harris's lawyer again moved to continue the trial date. When Harris complained, the trial court explained to Harris:

> your choices are today is if you want to go to trial today this afternoon, then you will have to do it by yourself without [your lawyer] if you wish to proceed and represent yourself because it's—as long as he remains your attorney, he has cited some compelling reasons why the matter should be continued.

RP (Jan. 14, 2014) at 19-20. Harris responded: "I don't need to discuss it. No disrespect. It's I don't need to discuss it because I am not stupid. I am not going to go pro se. I am not going to do that, so I am going to have to do this with him." RP (Jan. 14, 2014) at 20-21. The trial court warned Harris that "it's unlikely that if you make another motion that you are unhappy with him and you want the Court to relieve him, assuming I grant it, I can assure you that I am not going to appoint a fourth public defender for you." RP (Jan. 14, 2014) at 22.

On March 24, Harris's third lawyer filed a motion to withdraw. He explained that Harris had "orally fired [him] on the record several times "declaring that [he is] not his attorney and that he will not work with [him]." CP at 42. He also represented that Harris filed bar complaints against him and continued to appeal the dismissal of those complaints. He pointed to a breakdown in communication with Harris, and added that his health issues precluded him from taking the case to trial in the foreseeable future. On March 28, the trial court granted the motion.

The trial court appointed a fourth lawyer. Harris tried to make a record about one of the trial court's orders. The trial court told Harris that he needed to speak to his new lawyer and make motions through him. Harris responded that "when I asked [my lawyer] to do these things for me that you're telling me to do properly, he didn't do it. So what am I supposed to do if these attorneys aren't going to do it for me? I'm not going to go pro se." RP (Mar. 28, 2014) at 19.

5

On April 7, the trial court held a status conference hearing.  There was discussion about when time for trial would expire based on the appointment of new counsel.  The trial court had a colloquy with Harris:

> [DEFENSE ATTORNEY]: Do you think that the 60 days period started over again when I got appointed?
> [HARRIS]: Yes.
> THE COURT: All right. That means your speedy trial expires in May, end of May.  Do you agree with that sir, Mr. Harris?
> [DEFENSE ATTORNEY]: Whatever 60 days—
> [HARRIS]: I agree, man.  So basically what I am saying is I believe that my expiration date—if I am saying it right—would actually be the 30th, but—man, I don't know how to explain it.  I believe that my expiration date is the 30th. . . .
> [DEFENSE ATTORNEY]: And I am your new lawyer starting March 28th.
> [HARRIS]: Right.  So 60 days from—okay, yes.  I understand what you are saying.
> THE COURT: So why don't we count up 60 days; March 28th.  So the next order is going to reflect when the new speedy trial expiration date is.
> . . . .
> [THE COURT:] May 27th is the new speedy trial expiration date.

RP (Apr. 7, 2014) at 8-10.

The next week, the trial court held another status conference.  Harris claimed a violation of his time for trial right because his third lawyer was not actually disqualified, and instead moved for leave to withdraw because of health issues.  Harris acknowledged that he waived his time for trial right at the previous hearing, but claimed he was "either tricked or confused."  RP (Apr. 14, 2014) at 7.  Harris's current lawyer cited to *State v. Campbell*, 103 Wn.2d 1, 14-15, 691 P.2d 929 (1984), which permitted "counsel [to ask] for a continuance even over the client's objections on effective assistance grounds" because he "couldn't be ready in time."  RP (Apr. 14, 2014) at 8.  The trial court said that Harris's third lawyer was replaced for reasons other than just his health, and Harris's current lawyer agreed.  Harris told the trial court that "I'm ready myself today, but I

6

know that my attorney is definitely not, and that's who is representing me because I'm not going pro se." RP (Apr. 14, 2014) at 14.

On May 5, the trial court held another status conference. Harris's lawyer was still not ready to go to trial, stating "I'm asking for as much of a continuance—and I think, under *State v. Campbell*, and I could be wrong, . . . I think that enables me to ask for only 30 days, but I could be wrong." RP (May 5, 2014) at 23. He also told the trial court that Harris wanted him to object on his behalf because Harris felt his time for trial right was violated. When Harris again complained to the trial court about the continuances, the trial court advised Harris that he had,

> two choices. Your attorney has good cause to ask for a continuance. If you wish the trial to go forward on May 14—
> [HARRIS]: I will not go pro se.
> THE COURT: . . . Your choices are, we have this matter continued to sufficient time for your attorney to be ready, or to go by yourself.

RP (May 5, 2014) at 26.

On July 25, Harris filed another motion to withdraw his counsel. Harris explained to the trial court that there had been a breakdown in communication with his fourth lawyer. He claimed that he did not "feel safe going to trial with [his lawyer]" because he was not allowed to see some evidence. RP (July 25, 2014) at 12. Harris's lawyer denied this. Harris's lawyer explained to the trial court that he "anticipate[s] that [Harris] will file a bar complaint against me and file an appeal for ineffective assistance of counsel." RP (July 25, 2014) at 16. Harris later told the trial court that he already wrote a bar complaint against his lawyer because of their disagreement. The trial court responded:

7

Mr. Harris, I have several concerns. I told you last time that if you want to represent yourself you may do that. I am not going to keep continuing to appoint public defender after public defender for you. You have made similar complaints about each and every attorney I have appointed for you. I am quite concerned it wouldn't matter how many attorneys I gave you. You will have the same problems with them. None of the attorneys that I appoint for you would be good enough, that would do what you want them to do. I am not going down that road.

What I am hearing from this counsel is that he is working hard. Maybe you disagree with him in strategies. . . . He has not told me that he can't work with you. I am concerned about your ability to work with any attorney.

RP (July 25, 2014) at 22-23. When Harris protested, the trial court again explained that Harris would not receive another public defender:

I am just saying the time for you to speak every time you are in court is now over. I have been very, very patient with you and very accommodating.

I am denying your request for new counsel. You need to work with your current counsel. Your only other alternative is to go by yourself or hire private, and obviously you can't do that. So you have two choices. You can represent yourself, you stay with counsel—or actually there is a third choice—you hire private counsel.

You can't do that the day before trial either because that would require a whole new continuance. I am just kind of warning you: Do not come in here the day of trial before and try to say, "Now I have money. I am going to hire a private lawyer." That won't fly.

[HARRIS]: If I chose to represent myself, would counsel be able to like still be there for me to refer to?

THE COURT: No.

. . . .

[THE COURT:] Standby counsel, they end up, you know, being your attorney. So just have him represent you. I am stopping the conversation.

RP (July 25, 2014) at 30-31.

II. TRIAL

On the third day of trial, during voir dire, Harris continued to object to the decisions his lawyer made regarding jury selection. The State expressed concern about Harris's conduct. The following exchange occurred.

8

[THE STATE]: Your Honor, if this is going to be persistent—I mean, the defendant, once again, which we've been over, he has two decisions, whether to plead or to testify. If he wants to make legal arguments, then he can go pro se. I mean, this continued behavior normally isn't allowed for any defendant and it's just—I think it's going to interrupt the proceedings.

THE COURT: I will admonish him again. Mr. Harris, you need to speak through your attorney. Thank you.

[DEFENSE ATTORNEY]: May it please the court—

[HARRIS]: How you just—

THE COURT: Mr. Harris, you are speaking out of turn over and over again. Look at me, I'm warning you again. If you don't stop talking outside your attorney, I'm going to have you removed from the courtroom.

[HARRIS]: He doesn't do it.

THE COURT: You speak through your attorney. You have choices of going pro se or letting your attorney do your job. I will not allow this to continue. [The State] is correct, it's gone on too long. If you have motions, you make your attorney—

[HARRIS]: He won't do it.

THE COURT: He exercises his judgment as to what motions need to be made, period. . . .

[HARRIS]: I want to go pro se.

THE COURT: I believe I—wait a minute. Mr. Harris, you are interrupting the proceedings. I'm trying to talk to counsel about another juror questionnaire.

3 RP at 344-45. The trial court did not verbally answer Harris's request to go pro se and trial continued.

The jury found Harris guilty on all counts. The jury also found Harris guilty of the following aggravating factors: knowingly advancing the commercial sexual abuse of a minor and victimization of homeless youth on counts I through VI. The jury also found the aggravating factor that Harris knowingly profited from K.H.'s sexual conduct on count V.

After the jury announced its verdict, the trial court informed the jury that it would hear testimony and arguments on the recent recidivism aggravating factor as part of a bifurcated trial. The jury heard testimony. After closing arguments, Harris moved for the aggravating factor to be

dismissed because it was unconstitutionally vague.  The trial court denied the motion.  By special verdict, the jury found Harris guilty of the aggravating factor on counts I and II.

III.     SENTENCING

On September 26, the trial court entered judgment and sentence.  The trial court sentenced Harris to 486 months of confinement on each of the first six counts, and 60 months on counts VII and VIII.  The trial court ran all of the confinement concurrently for a total of 486 months.  The trial court noted that "an exceptional [sentence] is extremely warranted given all the aggravating circumstances."  RP (Sept. 26, 2014) at 19.  The trial court entered findings of fact and conclusions of law for the exceptional sentence.  In its findings, the trial court found:

I.

That the Defendant has been convicted of 6 Counts of Promoting Commercial Sexual Abuse of a Minor (Counts I through VI), one count of Tampering With a Witness, and one Count of Promoting Prostitution in the Second Degree. The Defendant's standard range is 240-318 months.   The statutory maximum is life incarceration.

II.

That the Jury was asked to return a special verdict to determine if the defendant committed this offense shortly after being released from incarceration for Count I and II.  The Jury determined that this aggravating factor was present.

III.

That the Jury was asked to return a special verdict to determine if the defendant knew that the victim of the current offense was a youth who was not residing with a legal custodian and the defendant established or promoted the relationship for the primary purpose of victimization.  The Jury determined that this aggravating factor was present.

CP at 435-36.  In its conclusions, the trial court determined:

II.

That there are substantial and compelling reasons to impose an exceptional sentence of 486 [months] on Counts I through VI.

. . . .

IV.

That the exceptional sentence is justified by the following aggravating circumstances—

a) . . . the defendant committed this offense shortly after his release from incarceration.

b) . . . the defendant knew that the victim of the current offense was a youth who was not residing with a legal custodian and the defendant established or promoted the relationship for the primary purpose of victimization.

c) . . . the defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished[.]

V.

That the grounds listed in the preceding paragraph, taken together or considered individually, constitute sufficient cause to impose the exceptional sentence. This Court would impose the exact same sentence even if only one of the grounds listed in the preceding paragraph is valid.

CP at 436-37

The trial court imposed the mandatory and discretionary LFOs the State requested. The trial court did not conduct an individualized inquiry into Harris's ability to pay the discretionary LFOs. Harris appeals.

ANALYSIS

I. EXCEPTIONAL SENTENCE

Harris argues that his exceptional sentence should be reversed because the recent recidivism aggravator is unconstitutionally vague, insufficient evidence supported the aggravating factor, and, in the alternative, his attorney rendered constitutionally deficient assistance because he failed to object to inadmissible hearsay testimony at the hearing on the aggravating factor. But the trial court found three aggravating factors and concluded that any one aggravating factor would have been sufficient grounds to impose the exceptional sentence. Because of the trial court's ruling

11

and because Harris does not challenge any other aggravating factor, we affirm Harris's exceptional sentence without reaching his other arguments on the aggravated factor of rapid recidivism. [8]

In *State v. Jackson*, 150 Wn.2d 251, 276, 76 P.3d 217 (2003), our Supreme Court stated, "Where the reviewing court overturns one or more aggravating factors but is satisfied that the trial court would have imposed the same sentence based upon a factor or factors that are upheld, it may uphold the exceptional sentence rather than remanding for resentencing."

In *State v. Trebilcock*, 184 Wn. App. 619, 634, 341 P.3d 1004 (2014), *review denied*, 183 Wn.2d 1001 (2015), we upheld the trial court's exceptional sentence. The defendant challenged one of the two aggravating factors. *Trebilcock*, 184 Wn. App. at 634-36. Because the trial court concluded that either aggravating factor alone would have been sufficient grounds to impose the sentence, we did not review the challenged aggravating factor. *Trebilcock*, 184 Wn. App. at 635-36. The same situation exists in Harris's case. Because the trial court would have sentenced Harris to 486 months based on only one aggravating factor, we need not decide his issues.[9]

II.     RIGHT TO BE PRESENT

Harris argues that the trial court violated his federal and state constitutional right to be present after he was removed from the October 4, 2013 hearing. We disagree.

A.     Standard of Review

A criminal defendant has a fundamental right to be present at all critical stages of a trial. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). The Washington Constitution provides

---

[8] We avoid ruling on constitutional issues when we can resolve the case on other grounds. *See State v. Haney*, 125 Wn. App. 118, 125-26, 104 P.3d 36 (2005).

[9] We do not address Harris's ineffective assistance of counsel argument regarding the aggravating factor because there is no prejudice. The trial court would have imposed the same sentence regardless of the number of aggravating factors.

in relevant part: "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel." WASH. CONST. art. 1, § 22. The right to be present is supported by the confrontation clause of the Sixth Amendment to the United States Constitution. *Irby*, 170 Wn.2d at 880. The United States Supreme Court has "recognized that this right is also 'protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him.'" *Irby*, 170 Wn.2d at 880-81 (quoting *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985)). Whether a defendant's constitutional right to be present has been violated is a question of law we review de novo. *Irby*, 170 Wn.2d at 880.

B.       Right to be Present Not Violated

"[A] defendant has a right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Irby*, 170 Wn.2d at 881 (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled in part on other grounds sub nom. Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964)). But that right is not absolute. *Irby*, 170 Wn.2d at 881. "'[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence.'" *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 106-07. A defendant does not have a right to be present when his "'presence would be useless, or the benefit but a shadow.'" *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 106-07). It follows then that a "defendant does not have a right to be present during in-chambers or bench conferences between the court and counsel on legal matters, at least when those matters do not require the resolution of disputed facts." *State v. Bremer*, 98 Wn. App. 832, 835, 991 P.2d 118 (2000).

A defendant does not generally have a right to be present where purely legal matters are at issue in a proceeding. *State v. Wilson*, 141 Wn. App. 597, 604, 171 P.3d 501 (2007); *see In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994) (holding defendant had no right to be present during various sidebar conferences and in-chambers hearings on "matters of law," where no prejudice was shown). For example, the absence of a defendant during a jury instruction hearing was not a violation of his constitutional rights. *Bremer*, 98 Wn. App. at 835.

Harris argues he had a right to be present when the trial court entered a stipulation and protection order and scheduled a status conference. He had been removed earlier after the trial court determined he was disruptive. The order related to "the use and distribution of image and audio evidence from the DVD recording . . . provided to the defense in the course of discovery." Clerk's Papers (CP) at 462. It pertained to interviews with children and "suspected child pornography." CP at 462. Harris's lawyer remained in court. Nothing occurred that required the resolution of disputed facts. Only legal matters and scheduling issues took place. For these reasons, the trial court did not violate Harris's right to be present.[10]

III.     RIGHT TO SELF-REPRESENTATION

Harris argues that his conviction should be reversed because the trial court violated his right to represent himself at trial when he requested to go pro se and the court did not respond to his request. We disagree.

A.     Standard of Review

We review decisions on the right to self-representation for an abuse of discretion. *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 667, 260 P.3d 874 (2011); *State v. Madsen*, 168 Wn.2d

---

[10] Harris also argues that the trial court violated his right to be present because it should not have removed him. Because no violation of his right to be present occurred, we need not address this argument.

496, 504, 229 P.3d 714 (2010). The "ad hoc," fact-specific analysis of waiver of counsel questions is best assigned to the trial court's discretion. *State v. Hahn*, 106 Wn.2d 885, 900, 726 P.2d 25 (1986). A trial court abuses its discretion if its "decision is manifestly unreasonable or 'rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" *Madsen*, 168 Wn.2d at 504 (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

#### B. The Trial Court Did Not Abuse Its Discretion

"Article 1, section 22 of the Washington Constitution explicitly guarantees criminal defendants the right to self-representation. The Sixth Amendment to the United States Constitution implicitly guarantees this right." *State v. Englund*, 186 Wn. App. 444, 455, 345 P.3d 859 (internal citations omitted) (footnote omitted), *review denied*, 183 Wn.2d 1011 (2015). Courts regard this right as "so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *Madsen*, 168 Wn.2d at 503. Improper denial of the right to represent one's self requires reversal regardless of whether prejudice results. *Madsen*, 168 Wn.2d at 503.

There is no automatic right to represent one's self, and "courts are required to indulge in 'every reasonable presumption against a defendant's waiver of his or her right to counsel.'" *State v. Coley*, 180 Wn.2d 543, 560, 326 P.3d 702 (2014) (quoting *Madsen*, 168 Wn.2d at 504), *cert. denied*, 135 S. Ct. 1444 (2015). "'The grounds that allow a court to deny a defendant the right to self-representation are limited to a finding that the defendant's request is equivocal, untimely, involuntary, or made without a general understanding of the consequences.'" *Englund*, 186 Wn. App. at 456 (quoting *Madsen*, 168 Wn.2d at 504-05). "Such a finding must be based on an 'identifiable fact.'" *Englund*, 186 Wn. App. at 456-57 (quoting *Madsen*, 168 Wn.2d at 505). If the defendant's request is not unequivocal or timely, the motion will not be considered. *Madsen*,

168 Wn.2d at 504. A defendant's request to proceed pro se must be unequivocal to protect "defendants from making capricious waivers of counsel and to protect trial courts from manipulative vacillations by defendants regarding representation." *State v. Stenson*, 132 Wn.2d 668, 740, 940 P.2d 1239 (1997). The request to be pro se must be unequivocal in the context of the record as a whole. *State v. Luvene*, 127 Wn.2d 690, 699, 903 P.2d 960 (1995).

> Timeliness of a request for self-representation is determined on a continuum:
>
> If the demand for self-representation is made (1) well before the trial or hearing and unaccompanied by a motion for a continuance, the right of self representation exists as a matter of law; (2) as the trial or hearing is about to commence, or shortly before, the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter; and (3) during the trial or hearing, the right to proceed pro se rests largely in the informed discretion of the trial court.

*State v. Barker*, 75 Wn. App. 236, 241, 881 P.2d 1051 (1994).

In reviewing the record as a whole, there are numerous colloquies between the trial court and Harris focused on his requests for new lawyers. He continually and repeatedly told the trial court he did not want to represent himself because he was not stupid." Additionally, we note that Harris's trial had been pending for over a year and a half. Many of the delays resulted from Harris's requests for new lawyers. The trial court appointed four different lawyers to represent Harris. Harris finally mentioned going pro se during voir dire, on the third day of trial. He did so only after the trial court again admonished him to talk through his lawyer. In the context of the whole record, Harris's statement that he wanted to represent himself was equivocal.

Under the totality of the circumstances, the trial court did not abuse its discretion by considering Harris's statement that he wanted to go pro se as equivocal.[11]  Harris's comment is more reasonably construed to be a continuation of his disruptive behavior.

IV.    LFOs

Harris contends that the trial court erred by not conducting a particularized inquiry before imposing discretionary LFOs.  At oral argument, the State conceded that the trial court failed to make an individualized inquiry into Harris's ability to pay discretionary LFOs.  The record reflects that the State's concession is correct.  We exercise our discretion and remand the case to the trial court to make an individual inquiry on Harris's ability to pay discretionary LFOs.  *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).

V.     STATEMENT OF ADDITIONAL GROUNDS

A.     Ineffective Assistance of Counsel

Harris asserts that he received ineffective assistance of counsel because his lawyer improperly stipulated to a waiver of speedy trial on April 7, 2014.  He asserts that this stipulation blocked any motion for dismissal that "would have been granted" on a violation of his right to a speedy trial.[12]  He further claims that his attorney's failure to move for dismissal on this ground also constitutes ineffective assistance.  We disagree.

1.     Standards of Review

We review claims of ineffective assistance of counsel de novo.  *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).  To prevail on a claim of ineffective assistance of counsel,

---

[11] Although we conclude Harris's request to go pro se was equivocal, we also note that the request was not timely.  It occurred on the third day of trial.

[12] Although Harris uses the term "speedy trial" he only asserts a violation of the "time for trial" court rule.  CrR 3.3.

the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). If either prong is not satisfied, Harris's claim must fail. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013). Representation is deficient if after considering all the circumstances, the performance falls "below an objective standard of reasonableness." *Grier*, 171 Wn.2d at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34. An appellant faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33.

"'We interpret a court rule as though it were enacted by the legislature, giving effect to its plain meaning as an expression of legislative intent.'" *State v. Miller*, 188 Wn. App. 103, 106, 352 P.3d 236 (2015) (quoting *State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007)). "'Plain meaning is discerned from reading the rule as a whole, harmonizing its provisions, and using related rules to help identify the legislative intent embodied in the rule.'" *Miller*, 188 Wn. App. at 106 (quoting *Chhom*, 162 Wn.2d at 458).

Under CrR 3.3(b)(1)(i), a defendant held in custody pending trial must be tried within 60 days of arraignment. The trial court may grant an extension of time for trial when unavoidable or unforeseen circumstances exist. CrR 3.3(e)(8). The trial court may also grant a continuance on the written agreement of the parties, or on the motion of the court or a party when required in the administration of justice and where the defendant will not be substantially prejudiced in the presentation of the defense. CrR 3.3(f)(1), (2). The trial court must "state on the record or in writing the reasons for the continuance." CrR 3.3(f)(2). Violation of the time for trial rule results in dismissal with prejudice. CrR 3.3(h). Under CrR 3.3(c)(2)(vii), "[o]n occurrence of one of the

following events, a new commencement date shall be established, and the elapsed time shall be reset to zero: . . . The disqualification of the defense attorney or prosecuting attorney. The new commencement date shall be the date of the disqualification."

2.      Stipulation of Time for Trial and Continuance

Harris challenges the "stipulation" on April 7, 2014, that resulted in a new time for trial expiration date and a continuance. SAG at 3. However, Harris's analysis relies on factual inaccuracies. At the April 7, hearing, there was some confusion as to when time for trial would expire. The trial court made it clear that the new commencement date occurred when the trial court appointed a new lawyer on March 28. The trial court made sure that Harris agreed to its calculations. The parties did not enter into a stipulation, and the trial court did not grant a continuance. The trial court made a determination, and Harris agreed with it. Because Harris's argument is based on erroneous facts, his claim fails.

3.      Failure to Move for Dismissal on Time for Trial Violation

Harris asserts that he received ineffective assistance of counsel when his lawyer failed to move for dismissal of the case because of a time for trial violation. He asserts that the motion to dismiss would have likely been granted because his third lawyer withdrew solely because of health issues, and the trial court improperly considered this action to be a conflict under CrR 3.3. We disagree.

A new commencement date is established when a defense attorney is disqualified. CrR 3.3(c)(2)(vii). Here, the trial court stated that it disqualified Harris's third lawyer not only because of health issues, but because Harris filed bar complaints against the lawyer and there was a breakdown in communication. The record supports the trial court's finding. Therefore, the trial

19

court properly computed the time for trial and an objection would not have been sustained. Harris cannot show prejudice. His claim fails.

We affirm but remand the case to the trial court to conduct an individualized inquiry on Harris's ability to pay discretionary LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Lee, J.