103 P.3d 1213 (2005)
STATE of Washington, Respondent,
v.
Bilal Haneff WILLIS, Petitioner.
No. 74561-7.
Supreme Court of Washington, En Banc.
Argued June 8, 2004.
Decided January 6, 2005.
Thomas Edward Doyle, Hansville, Patricia Anne Pethick, Tacoma, for Petitioner.
Steven Curtis Sherman, Thurston County Pros. Office, Olympia, for Respondent.
MADSEN, J.
Bilal Willis challenges the Court of Appeals decision affirming application of firearm enhancements to his sentences for burglary and theft. Willis contends that the jury was improperly instructed on the elements necessary to establish that he was *1214 "armed with a deadly weapon." RCW 9.94A.602. Alternatively, Willis contends there is insufficient evidence to support the jury's verdict on the firearm enhancements. We conclude that the jury was properly instructed and that the evidence is sufficient to establish the required nexus between Willis, the crimes, and the weapon in this case. Therefore, Willis was correctly subject to the firearm enhancements, and we affirm the Court of Appeals.

FACTS
On the evening of March 22, 2002, Rhonda Hicks and Lee Messer (Hicks' boyfriend) heard a loud breaking noise from the apartment below theirs, occupied by Teshone Preacely. When Hicks looked out her window, she saw a young woman standing near Preacely's apartment who appeared to be keeping watch. Hicks and Messer heard the young woman call to someone and then saw a man coming out of Preacely's apartment. The man was carrying what appeared to be electronic equipment. The man and the woman walked toward a gold Oldsmobile. Hicks testified that another man wearing a yellow jacket got out of the car and that the three put the items from the apartment into the trunk. Hicks thought that there was one more person in the car. Messer testified that two men got out of the car.
Hicks called the police and gave a description of the car and its license plate number. Messer went downstairs and saw Preacely's apartment door shattered. At trial Preacely testified that a DVD (digital video disk) player, a PlayStation 1, a Nintendo 64, and several games were stolen from his apartment.
Later that evening, police officers stopped the car Hicks and Messer had described. Willis, Debbie Gaiter, Kelvin Wilson, and Alicia-Renee Ford were in the car. Willis was the driver. Hicks and Messer were taken to a local parking lot where Hicks identified the vehicle, the young woman, and the man with a yellow jacket. The police officers detained the four and searched the car. They found a box of .32 caliber ammunition on the right rear floorboard as well as a gun holster and a loaded handgun underneath the backseat.
At trial, Gaiter admitted that she went to Preacely's apartment in a gold Oldsmobile on March 22, 2002, along with Willis, "DV," and "CK." She testified that Willis kicked in the apartment door and that Willis, "DV," and "CK" went inside the apartment. According to Gaiter, when the three came out, Willis was carrying a game system. After that, they stopped at Willis's sister's house for a while. After they left the house, one man got out of the car. Shortly thereafter, the police pulled the car over. Gaiter said that Willis took the handgun from under his seat and handed it to Ford when the police pulled the car over. Ford then passed it to Gaiter, who put it under the backseat.
Willis admitted that he had gone to Preacely's apartment with Gaiter, Wilson, and a man named "Devious" on March 22, 2002. However, he denied his involvement in the burglary. Willis stated that he remained in the car while Gaiter, Wilson, and "Devious" walked to the apartment. According to Willis, the three came back in a hurry and only "Devious" was carrying something. "Devious" ordered Willis to drive. Willis stated that "Devious" got out of the car, taking some of the items before Willis stopped at his sister's place. As to the handgun, Willis admitted that he handled it in the car on his way to Preacely's apartment. However, he insisted that the gun belonged to "Devious."
When the police officers searched Willis's sister's house, they found a box of .380 caliber bullets, a box of .32 caliber bullets, and a handgun instruction manual for the same type of firearm as the one found in the car. They also found a Nintendo 64 and some games.
Willis was charged with burglary in the first degree, theft in the second degree, and unlawful possession of a firearm. The State also alleged that Willis was armed with a deadly weapon. By special verdict, the jury found Willis guilty on all counts and found that he was armed with a firearm at the time of the commission of the burglary and the theft.
Willis appealed raising several issues, including a claim that the jury instruction regarding the firearm enhancements was improper *1215 because it failed to inform the jury that it must find a nexus between the defendant, the crime, and the firearm. In the alternative, Willis argued that the evidence is insufficient to support the special verdict.
In an unpublished opinion, the Court of Appeals affirmed Willis's convictions and firearm enhancements, rejecting all of his arguments. State v. Willis, noted at 118 Wash.App. 1026, 2003 WL 22039921 (2003). With regard to the firearm enhancements, the court held that the jury instruction sufficiently conveyed the nexus requirement. The court also held that there is sufficient evidence to support the special verdict.
We granted review only on issues relating to the firearm enhancements.

ANALYSIS
Willis first argues that the jury instruction regarding the firearm enhancements is improper because it failed to inform the jury that it must find a nexus between the defendant, the crime, and the firearm.
Alleged errors of law in jury instructions are reviewed de novo. Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160, 151 Wash.2d 203, 210, 87 P.3d 757 (2004). Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. Id.
The trial court's jury instruction 29 states in pertinent part:
[T]he State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crimes charged in count one ... and/or count three.[[1]] A pistol, revolver or any other firearm is a [deadly weapon] whether loaded or unloaded.
Verbatim Report of Proceedings at 148. The trial court later supplemented this instruction, adding that "armed" means "[a firearm was] readily available for offensive or defensive purposes." Clerk's Papers at 51.
RCW 9.94A.602 authorizes a special allegation when a defendant is armed during the commission of a crime. It provides in pertinent part:
In a criminal case wherein there has been a special allegation and evidence establishing that the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime ... if a jury trial is had, the jury shall, if it find[s] the defendant guilty, also find a special verdict as to whether or not the defendant or an accomplice was armed with a deadly weapon at the time of the commission of the crime.
... The following instruments are included in the term deadly weapon: ... pistol, revolver, or any other firearm....
RCW 9.94A.602. An affirmative finding on the special verdict results in an increase of the defendant's sentence pursuant to RCW 9.94A.510(3).
The test for determining when a defendant is "armed" was set out by this court in State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993). In Valdobinos, the police found cocaine and an unloaded rifle under a bed in the defendant's home while searching for evidence of delivery and possession of cocaine. Id. at 273, 282, 858 P.2d 199. Following trial, the defendant was convicted of delivery of cocaine while armed with a deadly weapon. Id. at 274, 858 P.2d 199. On review, we held that a person is "armed" for the purpose of a deadly weapon enhancement if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes. Id. at 282, 858 P.2d 199. We determined that evidence of an unloaded rifle under the bed, without more, was insufficient to show that the defendant was "armed" for the purpose of a deadly weapon enhancement, and invalidated the portion of the defendant's sentence based on the enhancement. Id.
Subsequent cases have reaffirmed the holding in Valdobinos that the mere presence of a deadly weapon at the crime scene is insufficient to show that the defendant is "armed." The Court of Appeals refined the analysis, requiring that there be a nexus between the defendant, the crime, and the *1216 weapon. In State v. Mills, 80 Wash.App. 231, 233, 907 P.2d 316 (1995), the police arrested the defendant outside his home for possession of methamphetamine and found a motel key while searching his car. After obtaining a warrant, the police searched the motel room to which the key belonged and found a gun along with narcotics. Id. The defendant was convicted and the court added a deadly weapon enhancement to his sentence. Id. The Court of Appeals reversed the deadly weapon enhancement, holding that the evidence must establish a nexus between the defendant and the deadly weapon in order to find that the defendant is "armed" for the purpose of a deadly weapon enhancement. Id. at 236-37, 907 P.2d 316.
Similarly, in State v. Johnson, 94 Wash.App. 882, 886-87, 974 P.2d 855 (1999), the Court of Appeals held that the State must prove a nexus between the defendant, the crime, and the weapon. In Johnson, when conducting a search of defendant's apartment the police found the defendant in bed in the bedroom, half asleep. Id. at 888, 974 P.2d 855. The police discovered heroin and arrested the defendant. Id. at 887, 974 P.2d 855. Later, in response to questioning, the defendant told officers there was a gun in a coffee table drawer. Id. at 888, 974 P.2d 855. At the time of the statement, the defendant was handcuffed and the gun was five to six feet away from him. Id. The defendant was convicted and the jury found he was armed with a deadly weapon. Id. On appeal, the Court of Appeals held that a nexus between the crime and the weapon is required, pointing out that without such a nexus, courts run the risk of punishing a defendant under the deadly weapon enhancement for having a weapon unrelated to the crime. Id. at 895, 974 P.2d 855. The court reversed, finding that no nexus existed.
We recently examined the Court of Appeals' requirement that the State prove that a nexus exists between the defendant, the crime, and the weapon before a sentence may be enhanced pursuant to RCW 9.94A.510. In State v. Schelin, 147 Wash.2d 562, 563-64, 55 P.3d 632 (2002), the police searched the defendant's home and found the defendant in the basement where the police later discovered marijuana and a loaded revolver on the wall. The revolver was some 6 to 10 feet away from where the defendant had been standing. Id. at 564, 55 P.3d 632. By special verdict, the jury found the defendant was armed with a deadly weapon. Id. at 565, 55 P.3d 632. We approved the developments in Mills and Johnson and held that there must be a nexus between the defendant, the crime, and the deadly weapon in order to find that the defendant was "armed" under the deadly weapon enhancement statute. The evidence was sufficient to support the special verdict. Id. at 567-70, 575, 55 P.3d 632.
Building on this court's discussion in Schelin, Willis contends that in order to properly instruct the jury on the applicable law, a firearm instruction must inform the jury of the nexus requirement. Willis asserts that the jury instruction in this case was improper, relying on the concurrence in Schelin. The concurrence noted that the State is required to affirmatively prove beyond a reasonable doubt that there is a nexus between the defendant, the crime, and the deadly weapon and suggests that a jury instruction that does not expressly mention the nexus requirement is deficient. Schelin, 147 Wash.2d at 576-77, 55 P.3d 632. However, the defendant failed to assign error to the jury instruction. Id.
As the State points out, the concurrence is not binding. Thus, Schelin does not support Willis's contention that a jury instruction relating to the deadly weapon enhancement must expressly include a nexus requirement.
Willis also relies on State v. Holt, 119 Wash.App. 712, 82 P.3d 688 (2004). In Holt, the defendants manufactured methamphetamine in a trailer. Id. at 716, 82 P.3d 688. Police officers found three firearms inside the trailer. Id. The defendants were convicted of unlawful manufacture of methamphetamine and each received a firearm enhancement. Id. at 715, 82 P.3d 688. The defendants appealed, arguing that the jury instruction, which was identical to that given in Schelin, failed to properly inform the jury of the nexus requirement. Id. at 726, 727 n. 6, 82 P.3d 688. The Court of Appeals agreed, holding that the nexus between the defendant, the crime, and the weapon must be set *1217 forth in the jury instruction. The court found that the instruction at issue failed to include the required nexus language and reversed the defendants' enhanced sentences. Id. at 728, 82 P.3d 688.
Willis contends that the instruction given here, as in Holt, failed to identify all of the elements necessary for the jury to render a special verdict on the firearm enhancement and thus his sentence must be overturned. We disagree. Fairly read, instruction 29 includes language requiring the jury to find a relationship between the defendant, the weapon, and the crime. Specifically, the defendant must have a deadly weapon, including a firearm, and the weapon must be readily available for offensive or defensive purposes at the time of the commission of the crime. Although the term "nexus" is not used, the language of the instruction informs the jury that it must find a relationship between the defendant, the crime, and the deadly weapon. Accordingly, we hold that the jury instruction here was proper. Express "nexus" language is not required.[2]
Next, Willis argues that there is insufficient evidence to support the special verdict. He maintains that the evidence does not establish the required nexus and, more particularly, that it does not establish he himself was armed. He reasons that while a firearm enhancement may be imposed if the jury finds that the defendant or an accomplice was armed, RCW 9.94A.602, instruction 29 omitted the phrase "or an accomplice." Thus, he contends, under the doctrine of the law of the case, the State was required to prove that Willis himself was armed.
The doctrine of the law of the case provides that a jury instruction not objected to becomes the law of the case. State v. Hickman, 135 Wash.2d 97, 102, 954 P.2d 900 (1998). In a criminal case, the State assumes the burden of proving otherwise unnecessary elements of the offense when such elements are included without objection in a jury instruction. Id.; State v. Lee, 128 Wash.2d 151, 159, 904 P.2d 1143 (1995); State v. Worland, 20 Wash.App. 559, 565-68, 582 P.2d 539 (1978). By failing to include the phrase "or an accomplice," instruction 29 required the State to prove that Willis himself was armed.
When considering facts in a challenge to sufficiency of the evidence, courts will draw all inferences from the evidence in favor of the State and against the defendant. Schelin, 147 Wash.2d at 573, 55 P.3d 632. Willis does not dispute that there was a weapon in the vehicle or that he handled it on the way to Preacely's apartment. Further, Debbie Gaiter testified that Willis broke down the door to Preacely's apartment and removed items. Police found a .32 handgun in the vehicle. Later, at Willis's sister's home they recovered a number of the stolen items, along with a box of .380 caliber bullets, a box of .32 caliber bullets, and a handgun instruction manual for the same type of firearm as the one found in the car.
We conclude there is sufficient evidence to find that the handgun was easily accessible and readily available for Willis's use, either for offensive or defensive purposes, and that there was a nexus between Willis, the crimes, and the handgun. Accordingly, there is sufficient evidence to support the special verdict.

CONCLUSION
We hold that the jury instruction regarding firearm enhancements was proper and that there is sufficient evidence to support the special verdict. We affirm the Court of Appeals.
We concur: JOHNSON, IRELAND, BRIDGE, OWENS and FAIRHURST, JJ.
SANDERS, J. (dissenting).
The majority asserts a jury instruction defining "armed" implicitly informs the jury that it must find a "nexus" between the weapon, the defendant, and the crime.[1] But the term "armed" as defined by this court's precedent, and as used in the jury instructions, *1218 has a very different meaning from the term "nexus." Because the jury could have found that the defendant was "armed" without finding a nexus between the defendant, the weapon, and the crime, the sentence enhancement could have been imposed without the jury finding each essential element for an enhancement. Due process requires the jury to find each element explicitly in order to impose the sentence enhancement. State v. Eastmond, 129 Wash.2d 497, 503, 919 P.2d 577 (1996).
"A person is `armed' if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes." State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993). It was this definition that was used in jury instruction 29. See majority at 1215.
In State v. Schelin, 147 Wash.2d 562, 55 P.3d 632 (2002), we recognized that this definition omits any nexus requirement between the defendant, the weapon, and the crime. "In addition to the test announced in Valdobinos, subsequent cases have refined the nexus required in a constructive possession case. Under a two-part analysis, there must be a nexus between the weapon and the defendant and between the weapon and the crime." Id. at 567-68, 55 P.3d 632. Webster's dictionary defines "nexus" as a "CONNECTION, INTERCONNECTION, TIE, LINK"; "a connected group or series." Webster's Third New International Dictionary 1524 (2002).
Suffice to say the definition of "armed" is not the same as "nexus" because "armed" as so defined does not require any connection to the crime. This was precisely why this court recognized the nexus requirement in Schelin. Indeed, the concluding sentence of the plurality opinion in Schelin specifically added the nexus requirement to the definition of "armed":
A defendant is "armed" when he or she is within proximity of an easily and readily available deadly weapon for offensive or defensive purposes and when a nexus is established between the defendant, the weapon, and the crime.
Schelin, 147 Wash.2d at 575-76, 55 P.3d 632 (emphasis added).
The rationale of Schelin still holds. Merely showing that a weapon was "readily available" to a defendant does not tie that weapon to the crime. Indeed, this court stated "the mere presence of a weapon at a crime scene may be insufficient to establish the nexus between a crime and a weapon." Id. at 570, 55 P.3d 632.
Here the jury could have found that a weapon was present in the car at the time of the burglary and the theft but may have concluded that the weapon was not connected to the defendant (who testified that the gun belonged to another person in the car) or to the crime (concluding that the gun in the car, while available to the defendant, was not part of the burglary or theft). But under the instructions, the jury was allowed to impose the sentence enhancement because the definition of "armed" required only that the gun be "readily available."
Division Two of the Court of Appeals cogently analyzed our prior case law and the due process requirement that the state prove the nexus element beyond a reasonable doubt in State v. Holt, 119 Wash.App. 712, 728, 82 P.3d 688 (2004). While the majority summarizes Holt,[2] it does not distinguish Holt's analysis or even purport to disapprove it.
Because the definition of "armed" as used in the jury instructions in this case does not include the nexus requirement from Schelin, I cannot agree with the majority's conclusion that "the language of the instruction informs the jury that it must find a relationship between the defendant, the crime, and the deadly weapon."[3]
I dissent.
We concur: ALEXANDER, C.J., and CHAMBERS, J.
NOTES
[1] Count one is burglary in the first degree. Count three is theft in the second degree.
[2] This is not to say that including such language would be error. Depending on the facts of the case, such language might assist the jury in reaching its decision.
[1] Majority at 1217.
[2] Majority at 1217.
[3] Majority at 1217.