# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48183-9-II |
| Respondent, | |
| v. | |
| KEITH ADAIR DAVIS, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Keith Adair Davis appeals his conviction and sentence for assault in the second degree with a deadly weapon enhancement.[1] We conclude that sufficient evidence supported his conviction; the trial court did not err by imposing the deadly weapon enhancement; the trial court did not err by instructing the jury on reasonable doubt; and we waive appellate costs. Further, the trial court did not err by denying Davis's motion for a mistrial and denying his motion to represent himself. We affirm.

### FACTS

On the evening of April 15, 2015, Willoughby Lee Jr.'s daughter went into a store in Olympia. Lee, a 90-year-old man, remained in the passenger seat of their locked car.

Davis used crystal methamphetamine that evening and believed that an "international agent" was following him. 2 Report of Proceedings (RP) at 160. Davis approached Lee's car and made a hand motion up to his mouth, seemingly asking for a cigarette. Lee yelled to Davis that he

---

[1] Davis does not raise any issues related to his conviction for malicious mischief in the third degree.

did not smoke. Davis stood by the left front wheel of the car and started pounding on the car's hood.

Lee called 911 for help and while on the phone with the dispatcher, Davis moved to the driver's side window. Davis intentionally threw a rock through the driver's side window, breaking the glass. The rock landed on the passenger side floorboard between Lee's feet. Davis claimed he only tried to get into the car and he did not try to hit Lee.

Davis opened the driver's side door and entered the car. According to Davis, he pleaded with Lee to give him a ride because he was scared and needed to leave. Davis grabbed Lee's forearm, and broken glass from the window on Lee's forearm cut him. Davis "came across at [him]," so Lee punched him in the face. 1 RP at 63. Alec Kirkpatrick observed Davis trying to pull Lee out of the car and heard Lee yelling for help. Kirkpatrick pulled Davis out of the car by his hips. Kirkpatrick heard Davis say that Davis "was going to take other cars." 1 RP at 118.

The case proceeded to trial on charges of assault in the second degree with a deadly weapon enhancement, and malicious mischief in the third degree. The State alleged that the assault in the second degree occurred either with a deadly weapon or with the intent to commit a felony.

I.     PRETRIAL

On June 8, 2015, the trial court held a hearing on Davis's motion to waive counsel. The trial court had a colloquy with Davis about his knowledge of trial procedure and his rights as a defendant. The trial court denied the motion and ruled that Davis was not making the waiver intelligently and knowingly.

On July 16, Davis again moved to waive counsel, before a different judge. He was disruptive during the hearing. The trial court denied the motion and reasoned that Davis did not make the waiver intelligently and knowingly.

On August 25, Davis filed a declaration and stated that he had been unemployed since 2002, and he last received public assistance just before his arrest. He only received money from public assistance, and he was indigent.

On September 3, the trial court held a hearing on Davis's renewed motion to waive counsel. The trial court continued the hearing. The trial court instructed the State and Davis's counsel to "set a special hearing for [Davis's] case as soon as possible." RP (Sept. 3, 2015) at 7. This motion was not addressed again.

On September 11, Davis's lawyer filed a motion for withdrawal because he believed he could no longer communicate with Davis. The trial court held a hearing and denied the motion without prejudice.

II. TRIAL

On September 28, trial began before a judge who had not previously heard motions in the case. Before voir dire, the trial court heard Davis's renewed motion to waive counsel. The trial court advised Davis of the risks of self-representation and read the transcript of Davis's previous colloquy with a different judge when he previously had tried to waive counsel. When Davis said he would stay up "seven days" reading cases, the trial court reminded him that trial would start that morning and he would not have time. 1 RP at 21. Davis said, "That's fine." 1 RP at 21. The trial court granted Davis's motion. The trial court explained that Davis's request was timely, unequivocal, but his "lack of knowledge of the court rules and court protocols" required "hybrid representation" with his counsel.[2] 1 RP at 25.

---

[2] Davis's counsel was to take an "active, not passive," role. 1 RP at 25. During trial, Davis questioned witnesses and would often ask his counsel for advice. Davis's counsel asked Davis questions when he took the stand.

3

At the end of trial, the jury received the following instructions on the burden of proof and on the deadly weapon enhancement.

## INSTRUCTION NO. 4

The defendant has entered a plea of not guilty. That plea puts in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists as to these elements.

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Clerk's Papers (CP) at 87.

## INSTRUCTION NO. 21

For purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crime in Count I.

A deadly weapon is an implement or instrument that has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death.

CP at 104.

In the middle of the State's closing argument, outside the presence of the jury, Davis moved for a mistrial. He argued that he did not have time to prepare for the case. He told the trial court that "the main reason for the mistrial is I've been asking to exercise my constitutional right to represent myself in this matter for six months." 2 RP at 264. The trial court denied the motion and responded that it advised Davis on numerous occasions not to represent himself because he did not understand the rules of evidence and was not prepared to handle the trial. The trial court also reminded Davis that he never requested a continuance.

4

The jury found Davis guilty of assault in the second degree and of malicious mischief in the third degree. By special verdict, the jury found that Davis assaulted Lee with a deadly weapon and that he assaulted Lee with the intent to commit theft of a motor vehicle. Also by special verdict, the jury found the enhancement, i.e. that Davis was armed with a deadly weapon during the commission of the crime.

On October 22, the trial court entered the judgment and sentence, which included the deadly weapon enhancement of 12 months of confinement. The trial court sentenced Davis to 80 months of confinement and 18 months of community custody.

Davis moved for an order of indigency. Davis said he would be unable to pay legal financial obligation fees because he did not have money and received social security. The trial court filed an order of indigency for this appeal.

Davis appeals.

## ANALYSIS

I.  SUFFICIENCY OF THE EVIDENCE

Davis argues that the State failed to present sufficient evidence to convict him of assault in the second degree with a deadly weapon. We disagree.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Homan*, 181 Wn.2d at 106 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). In addition, we "must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence." *Homan*, 181 Wn.2d at 106.

The jury unanimously found by special verdict that Davis committed the assault in the second degree against Lee both with a deadly weapon and with the intent to commit a theft of a motor vehicle. Because Davis does not challenge the sufficiency of the evidence on the assault with the intent to commit a felony prong, and because both prongs have a seriousness level of IV and the same standard range,[3] we need not consider the issue further. *See State v. Ortega-Martinez*, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994). Even if sufficient evidence did not exist to support his conviction under the deadly weapon prong, his conviction and sentence would still stand.

II.     DEADLY WEAPON ENHANCEMENT

Davis argues that the trial court erred by sentencing him with the deadly weapon enhancement because the trial court erred by instructing the jury and because insufficient evidence existed to support the jury's special verdict on the enhancement. Davis also argues that committing assault in the second degree required proof of a nexus between the weapon and the crime.

We conclude that the trial court did not err by instructing the jury on the enhancement, and that sufficient evidence existed to support the deadly weapon enhancement.

---

[3] RCW 9.94A.515.

A.     JURY INSTRUCTION

Davis argues that the deadly weapon enhancement jury instruction did not contain all of the elements and relieved the State of its burden of proof.  He also argues the instruction erroneously failed to instruct on the State's burden to prove a connection between Davis, the crime, and the weapon.  We disagree.

As an initial matter, the court did not err by failing to give an instruction that nobody proposed.  Therefore, under RAP 2.5, Davis failed to preserve the error for appeal.  *See State v. Donald*, 178 Wn. App. 250, 271, 316 P.3d 1081 (2013).  We need not consider issues that are raised for the first time on appeal unless they are manifest constitutional errors.  RAP 2.5(a); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).  "Accordingly, an appellant may raise an error for the first time on appeal if he or she demonstrates (1) that the error is manifest and (2) that the error is truly of constitutional dimension."  *In re Det. of Brown*, 154 Wn. App. 116, 121, 225 P.3d 1028 (2010).

Invited manifest constitutional error cannot be raised for the first time on appeal, but failing to except to an instruction does not constitute invited error.  *State v. Corn*, 95 Wn. App. 41, 56, 975 P.2d 520 (1999).  An error is manifest when it has practical and identifiable consequences at trial.  *State v. Stein*, 144 Wn.2d 236, 240, 27 P.3d 184 (2001).

1.     LEGAL PRINCIPLES

We review allegedly erroneous jury instructions de novo, asking whether they allowed the parties to argue their case theories, did not mislead the jury, and properly informed the jury of the applicable law.  *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005).

For a deadly weapon enhancement special verdict, the State must prove beyond a reasonable doubt that the defendant was armed.  *State v. Schelin*, 147 Wn.2d 562, 566, 55 P.3d

632 (2002). A person is armed if, while committing the crime, a weapon is readily available or easily accessible for use, for either offensive or defensive purposes. *Schelin*, 147 Wn.2d at 567. The jury must find a relationship between the defendant, the weapon, and the crime. *Willis*, 153 Wn.2d at 374. The nexus is not an essential element of the crime. *State v. Johnson*, 185 Wn. App. 655, 676, 342 P.3d 338, *review denied*, 184 Wn.2d 1012 (2015). The term "nexus" does not have to be used in the jury instruction. *Willis*, 153 Wn.2d at 374.

2.     THE TRIAL COURT DID NOT ERR BY INSTRUCTING THE JURY

Davis argues that the trial court erred because it did not instruct jurors to determine whether the rock was easily accessible and readily available or that there was a nexus between Davis, the crime, and the rock. We disagree.

The trial court instructed the jury:

> For purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crime in Count I.
> A deadly weapon is an implement or instrument that has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death.

CP at 104.

In *Willis*, the trial court instructed the jury that "armed" meant "[a firearm was] readily available for offensive or defensive purposes." 153 Wn.2d at 371. The *Easterlin* court noted that "[t]he State is likely correct that in actual possession cases, it will rarely be necessary to go beyond the commonly used 'readily accessible and easily available' instruction. However, the instructions in a particular case must be adequate to permit the parties to argue their theory of the case."[4] *State*

---

[4] Davis does not assert he could not argue his theory of the case.

8

*v. Easterlin*, 159 Wn.2d 203, 209, 149 P.3d 366 (2006) (quoting *State v. Dana*, 73 Wn.2d 533, 537, 439 P.2d 403 (1968)).

In *State v. Hernandez*, 172 Wn. App. 537, 544, 290 P.3d 1052 (2012), we held that even if the court considered "a firearm enhancement, a 'nexus' finding was not required because the possession was actual, not constructive." Here, Davis actually possessed the deadly weapon, the rock, and he threw it through the car window. For this reason, the trial court did not need to specifically instruct the jury on a connection between the weapon and the crime.[5]

Because the trial court did not err in instructing the jury on the deadly weapon enhancement there is no manifest constitutional error and the issue cannot be raised for the first time on appeal.

B.      SUFFICIENT EVIDENCE SUPPORTED THE ENHANCEMENT

Davis argues that insufficient evidence supported that he was armed with a deadly weapon during the assault. We disagree.

The same standard of review for sufficiency of the evidence applies here as it did in Section I.

Here, Davis, intentionally threw a rock through a window in Lee's direction. A rock used in this manner is an instrument that is likely to produce or may easily and readily produce death. *State v. Sorenson*, 6 Wn. App. 269, 273, 492 P.2d 233 (1972) (quoting RCW 9.95.040 describing what constitutes a deadly weapon). Therefore, we conclude that when viewing the evidence in the

---

[5] We note that the instruction given in this case was based on Washington Pattern Jury Instruction 2.07, the second paragraph of which includes both the "easily accessible and readily available" and nexus language. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 2.07, at 40 (3d ed. 2008). Yet, the WPIC's notes section instructs: "Do not use the second paragraph in a case in which the weapon was actually used and displayed during the commission of the crime." 11 WPIC 2.07, at 40.

light most favorable to the State, a reasonable juror could have found beyond a reasonable doubt that Davis was armed with the rock, a deadly weapon, at the time of the crime.

III.    REASONABLE DOUBT JURY INSTRUCTION

Davis argues that the reasonable doubt instruction violated his Fourteenth Amendment right to due process because it improperly focused the jury to search for the truth. We disagree.

We recently, and once again, reject the argument Davis makes. *State v. Jenson*, 194 Wn. App. 900, 902, 378 P.3d 270 (2016); *State v. Fedorov*, 181 Wn. App. 187, 199-200, 324 P.3d 784, *review denied*, 181 Wn.2d 1009 (2014); *State v. Kinzle*, 181 Wn. App. 774, 784-85, 326 P.3d 870, *review denied*, 181 Wn.2d 1019 (2014). The trial court did not err in instructing the jury on reasonable doubt.

IV.    STATEMENT OF ADDITIONAL GROUNDS

Pursuant to RAP 10.10, Davis has filed a Statement of Additional Grounds (SAG). We are unable to address some of his assertions. To the extent Davis asserts that the trial court erred by granting his counsel's motion to withdrawal, Davis does not identify what error occurred. He merely states it as a fact that his counsel moved to withdraw. Although in a SAG a defendant need not refer to the record or cite authority, he is required to inform us of the "nature and occurrence of the alleged errors." RAP 10.10(c). This assertion of error is too vague for us to identify the issues and address them.

In addition, Davis makes several assertions involving his ineffective assistance of counsel claim that rely on matters outside the record. He states his attorney came to court unprepared; he was not honest; he failed to investigate and obtain evidence; he made "serious" errors; he represented a conflicting interest; he violated the Rules of Professional Conduct; he did not prepare a defense for Davis; and although they discussed a diminished capacity defense, his attorney did

10

not present it. All of these claims pertain to matters outside the record. Moreover, Davis does not demonstrate how these actions prejudiced him. On direct appeal, we cannot consider matters outside the record. *State v. Curtiss*, 161 Wn. App. 673, 703, 250 P.3d 496 (2011). Therefore, we do not consider these issues.

Finally, there are issues asserted by Davis that are without merit. He asserts that the trial court erred because it did not provide a continuance when he began to represent himself. Because Davis never moved for a continuance, this assertion is without merit. Davis also asserts that he received ineffective assistance of counsel because his counsel did not submit any exhibits or evidence at trial. This assertion is without merit because Davis represented himself at trial.

We do address the remaining assertions raised in the SAG.

A.      Waiver of Counsel

Davis seems to assert that the trial court erred by denying his motions to waive counsel on three separate occasions. We disagree.

1.      Standard of Review

We review a trial court's decision regarding the right to self-representation for an abuse of discretion. *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 667, 260 P.3d 874 (2011). A trial court abuses its discretion if its "decision is manifestly unreasonable or 'rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" *State v. Madsen*, 168 Wn.2d 496, 504, 229 P.3d 714 (2010) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

2.      The Trial Court Did Not Abuse Its Discretion

"Article 1, section 22 of the Washington Constitution explicitly guarantees criminal defendants the right to self-representation. The Sixth Amendment to the United States Constitution implicitly guarantees this right." *State v. Englund*, 186 Wn. App. 444, 455, 345 P.3d

11

859, *review denied*, 183 Wn.2d 1011 (2015) (internal citations omitted) (footnote omitted). Courts regard this right as "so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *Madsen*, 168 Wn.2d at 503. Improper denial of the right to represent oneself requires reversal regardless of whether prejudice results. *Madsen*, 168 Wn.2d at 503.

Yet, there is no automatic right to represent oneself, and "'courts are required to indulge in 'every reasonable presumption against a defendant's waiver of his or her right to counsel.'" *State v. Coley*, 180 Wn.2d 543, 560, 326 P.3d 702 (2014) (quoting *Madsen*, 168 Wn.2d at 504), *cert. denied*, 135 S. Ct. 1444, 191 L. Ed. 2d 399 (2015) (internal quotations omitted). "'The grounds that allow a court to deny a defendant the right to self-representation are limited to a finding that the defendant's request is equivocal, untimely, involuntary, or made without a general understanding of the consequences.'" *Englund*, 186 Wn. App. at 456 (quoting *Madsen*, 168 Wn.2d at 504-05). Such a finding must be based on an "'identifiable fact.'" *Englund*, 186 Wn. App. at 457 (quoting *Madsen*, 168 Wn.2d at 505).

"A court may not deny a motion for self-representation based on grounds that self-representation would be detrimental to the defendant's ability to present his case or concerns that courtroom proceedings will be less efficient and orderly than if the defendant were represented by counsel." *Madsen*, 168 Wn.2d at 505. But a trial court's "concern regarding a defendant's competency alone is insufficient; if the court doubts the defendant's competency, the necessary course is to order a competency review." *Madsen*, 168 Wn.2d at 505.

If the defendant's request is equivocal or untimely, the motion will not be considered. *Madsen*, 168 Wn.2d at 504. A defendant's request to proceed pro se must be unequivocal to protect "defendants from making capricious waivers of counsel and to protect trial courts from

manipulative vacillations by defendants regarding representation." *State v. Stenson*, 132 Wn.2d 668, 740, 940 P.2d 1239 (1997). The request to represent oneself must be unequivocal in the context of the record as a whole. *State v. Luvene*, 127 Wn.2d 690, 698-99, 903 P.2d 960 (1995).

> Timeliness of a request for self-representation is determined on a continuum:
>
> If the demand for self-representation is made (1) *well before the trial* or hearing and unaccompanied by a motion for a continuance, the right of self representation exists as a matter of law; (2) *as the trial or hearing is about to commence, or shortly before, the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter*; and (3) during the trial or hearing, the right to proceed pro se rests largely in the informed discretion of the trial court.

*State v. Barker*, 75 Wn. App. 236, 241, 881 P.2d 1051 (1994) (emphasis added).

All of Davis's pretrial requests to represent himself were timely and unequivocal. However, we conclude that the trial court did not abuse its discretion by denying them. The judges who heard the requests determined that Davis did not have a general understanding of the consequences of waiving counsel and representing himself and that Davis's requests were not made intelligently and knowingly. The trial court made these determinations based on colloquies with Davis which demonstrated he did not understand trial procedures, rules, and how his representation would affect the result. The attempted waivers were made without a general understanding of the consequences of self-representation.

As to the last pretrial motion, Davis was disruptive and the trial court instructed the State and Davis's counsel to "set a special hearing for [Davis's] case as soon as possible." RP (9/3/15) at 7. The special hearing never occurred and the motion was not addressed again. Therefore, we conclude the trial court did not err by denying Davis's multiple motions to waive counsel.

B.      Sufficiency of the Evidence

In his SAG, Davis asserts that insufficient evidence existed to convict him of assault in the second degree.  As discussed previously, we disagree.

C.      Motion for a Mistrial

In his SAG, Davis asserts that the trial court erred by denying his motion for a mistrial. We disagree.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *State v. Elkins*, 188 Wn. App. 386, 407, 353 P.3d 648, *review denied*, 184 Wn.2d 1025 (2015).  "The trial court abuses its discretion only when 'no reasonable judge would have reached the same conclusion.'"  *Elkins*, 188 Wn. App. at 407 (quoting *State v. Rodriguez*, 146 Wn.2d 260, 269, 45 P.3d 541 (2002)).

Declaration of a mistrial is a "drastic measure," and there are other options a trial court may choose to exercise based on the individual situation.  *State v. Falk*, 17 Wn. App. 905, 908, 567 P.2d 235 (1977).  We will overturn the trial court's denial of a motion for mistrial only "when there is a 'substantial likelihood' that the error prompting the mistrial affected the jury's verdict." *Rodriguez*, 146 Wn.2d at 269-70 (quoting *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994) (internal quotations omitted), *cert. denied*, 514 U.S. 1129, 115 S. Ct. 2004, 131 L. Ed. 2d 1005 (1995)).  "In determining whether the effect of an irregular occurrence at trial affected the trial's outcome, this court examines: (1) the seriousness of the irregularity; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it." *State v. Greiff*, 141 Wn.2d 910, 921, 10 P.3d 390 (2000).

When Davis moved for a mistrial, he argued that he did not have time to prepare for the case.  Davis did not establish any irregularity at trial, he only claimed that he did not have enough

time to prepare. Davis moved to waive counsel multiple times, but he did not move for a continuance when the trial court granted his motion to waive counsel. Davis has not established a substantial likelihood that that his lack of time to prepare for trial affected the jury's verdict. Therefore, we conclude that the trial court did not abuse its discretion by denying Davis's motion for a mistrial.

V.     APPELLATE COSTS

Davis argues that if the State substantially prevails on appeal and makes a request for costs, we should decline to impose costs because he is indigent. The State argues that costs may be appropriate to impose on the appellant, but that the procedure first established in *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016), raises the issue prematurely. We exercise our discretion and decline to impose appellate costs.

Review of appellate costs requires an individualized inquiry and necessitates that this court be mindful of the concerns raised in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). *Sinclair*, 192 Wn. App. at 391. We should consider the issue of appellate costs in a criminal case during the course of appellate review when the issue is raised in an appellant's brief. *Sinclair*, 192 Wn. App. at 389-90. The award of appellate costs by an appellate court is discretionary. *Sinclair*, 192 Wn. App. at 385-86; RCW 10.73.160(1).

In exercising our discretion on this issue, we review the record. *Sinclair*, 192 Wn.2d at 391. The trial court entered an order of indigency. The trial court sentenced Davis to 80 months of confinement and 18 months of community custody. Davis said he would be unable to pay legal financial obligation fees because he did not have money and he received only social security. Davis also filed a declaration and stated that he had been unemployed since 2002, and he last received public assistance just before his arrest. We presume that a party remains indigent

"throughout the review" unless the trial court finds otherwise. RAP 15.2(f). RCW 10.73.160(1) vests this court with discretion to award appellate costs. Therefore, we exercise our discretion and hold that an award of appellate costs to the State is not appropriate.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, J.

Maxa, A.C.J.