IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34702-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| YAN Y. YEFREMOV, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Yan Yefremov appeals his conviction for escape from community custody. The statute defining this crime requires the defendant to have acted "willfully." RCW 72.09.310. Mr. Yefremov argues the trial court erred when it refused his proposed jury instruction, which equated willfulness with purpose, and instead gave an instruction equating willfulness with knowledge. He also argues he received ineffective assistance of counsel because defense counsel did not object when the community corrections officer (CCO) testified that he had absconded from community custody in the past. We disagree with Mr. Yefremov's contentions and affirm.

FACTS

In April 2014, Mr. Yefremov began serving a 12-month term of community custody as part of a felony sentence. His assigned CCO was Jeremy Taylor. One of Mr. Yefremov's community custody conditions was to report to and be available for contact with CCO Taylor. Mr. Yefremov was required to report to the Department of Corrections (Department) two times per month. CCO Taylor advised Mr. Yefremov of the expectations and conditions of community custody.

Mr. Yefremov violated the community custody conditions several times. This extended his term of community custody beyond the time it would have ordinarily ended.

At one of their meetings, CCO Taylor instructed Mr. Yefremov to personally meet with him on September 16, 2015. CCO Taylor wrote this date on the back of a business card and gave it to Mr. Yefremov. The business card also listed CCO Taylor's cellular telephone number, his office telephone number, and the address where Mr. Yefremov was required to report.

Mr. Yefremov did not report for the September 16 supervision meeting. He did not contact CCO Taylor either before or at any time after the scheduled meeting. CCO Taylor called Mr. Yefremov's primary number as well as Mr. Yefremov's emergency contact. CCO Taylor was unable to reach Mr. Yefremov at either number.

A warrant was issued for Mr. Yefremov's arrest. The Department attempted to arrest Mr. Yefremov at his last known address, but was unable to do so. Mr. Yefremov was arrested roughly 60 days later.

PROCEDURE

The State charged Mr. Yefremov with escape from community custody under RCW 72.09.310. At trial, the State called CCO Taylor. During direct examination, the State asked CCO Taylor why Mr. Yefremov was still under community custody in September 2015, when his 12-month term of community custody began in April 2014. CCO Taylor responded that community custody sentences are tolled when the supervisees "abscond from supervision or willfully make themselves not available." Report of Proceedings (RP) (June 7, 2016) at 76. CCO Taylor noted that "Mr. Yefremov had multiple prior violations, to include absconding from supervision." RP (June 7, 2016) at 75-76. Defense counsel did not object to this testimony.

Later on, the State asked CCO Taylor whether Mr. Yefremov had enrolled in any substance abuse treatment programs that were available to him. CCO Taylor responded that Mr. Yefremov was enrolled in outpatient services at one point, but that he was removed from those services due to "one of his prior violation processes of absconding." RP (June 7, 2016) at 80. Defense counsel did not object to this testimony.

3

On cross-examination, defense counsel asked CCO Taylor whether Mr. Yefremov had ever committed a community custody violation that resulted in a criminal prosecution. CCO Taylor responded that, "Prior to this [Mr. Yefremov] had seven prior abscondings." RP (June 7, 2016) at 89. Defense counsel did not object to this testimony. Continuing, CCO Taylor confirmed that none of these prior absconding offenses had resulted in a criminal prosecution.

Mr. Yefremov testified. He testified he had been addicted to opiates for 15 years, which caused him to engage in criminal behavior. He acknowledged his poor attendance at his supervision meetings. He testified that every time he missed his meetings, it was because he knew he would test positive for drugs. He further testified that this was why he missed the September 16, 2015 supervision meeting.

After both parties rested, Mr. Yefremov proposed the following jury instruction: "Willful means acting intentionally and purposely, and not accidentally or inadvertently." Clerk's Papers (CP) at 23. The trial court denied Mr. Yefremov's proposed instruction, reasoning that it differed from the Washington Pattern Jury Instructions (WPICs). Instead, the court gave the following instruction, consistent with WPIC 10.05: "A person acts willfully when he or she acts knowingly." CP at 32; *see* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.05, at 231 (4th ed. 2016).

4

The jury found Mr. Yefremov guilty as charged. Mr. Yefremov appeals.

ANALYSIS

ESCAPE FROM COMMUNITY CUSTODY MENS REA REQUIREMENT

Mr. Yefremov argues that the crime of escape from community custody requires proof of a purposeful act, and that the trial court erred when it declined to give his proposed jury instruction defining "willful" as "acting intentionally and purposely." CP at 23.

Jury instructions are proper when they correctly inform the jury of the applicable law. *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005). This court reviews alleged errors of law in jury instructions de novo. *Id.*

An inmate in community custody is guilty of escape from community custody if he or she "*willfully* discontinues making himself or herself available to the department for supervision by making his or her whereabouts unknown or by failing to maintain contact with the department as directed by the community corrections officer." RCW 72.09.310 (emphasis added). Since 1975, RCW 9A.08.010(4) has provided that "[a] requirement that an offense be committed wilfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements plainly appears." *See* LAWS OF 1975, 1st Ex. Sess., ch. 260.

5

This court recently addressed whether the "willfulness" requirement in the escape from community custody statute is equivalent to a purposeful mens rea or a knowledge mens rea. *See State v. Buttolph*, __ Wn. App. __, 399 P.3d 554 (2017). In that case, Tylor Buttolph was convicted of escape from community custody under RCW 72.09.310. *Buttolph*, 399 P.3d at 555. On appeal, he argued, like Mr. Yefremov does here, that construing "willfulness" in RCW 72.09.310 as only requiring knowledge would make it a crime for a person to inadvertently miss a community custody meeting. *Buttolph*, 399 P.3d at 555. Mr. Buttolph relied principally on *State v. Danforth*, 97 Wn.2d 255, 643 P.2d 882 (1982) for the proposition that the legislature plainly intended to impose a greater mens rea requirement for this statute. *Buttolph*, 399 P.3d at 555. Mr. Yefremov also relies on this same case.

This court rejected Mr. Buttolph's argument, holding that the "willfulness" requirement in RCW 72.09.310 is satisfied by a person acting knowingly with respect to the material elements of the crime. *Buttolph*, 399 P.3d at 557. This court reasoned that "when the legislature enacted the escape from community custody statute in 1988, it presumably knew that RCW 9A.08.010(4) equated willfulness with knowledge." *Id.* at 556. Therefore, this court reasoned, if the legislature had intended a greater mens rea requirement, it would have stated its purpose directly. *Id.*

6

This court further rejected Mr. Buttolph's reliance on *Danforth* for the proposition that the legislature plainly intended to impose a greater mens rea requirement. *Danforth* involved a former statute that made it a crime to willfully fail to return to a work release program. *Danforth*, 97 Wn.2d at 257. To avoid criminal liability under that statute, the person had to return to the designated place "'*at the time specified.*'" *Id.* (emphasis added) (quoting former RCW 72.65.070 (1967)). The *Danforth* court reasoned that a "purposeful" mens rea was required so as not to criminalize a person's inadvertent failure to return to a specific place on time. *Id.* at 258.

However, this court distinguished the escape from community custody statute from the former failure to return to work release statute. *Buttolph*, 399 P.3d at 557. Because a person can avoid criminal liability under RCW 72.09.310 by simply contacting the Department—which was not the case under former RCW 72.65.070—this court reasoned that a purpose to impose a greater mens rea requirement did not plainly appear, as it did in *Danforth*. *Buttolph*, 399 P.3d at 557.

In light of *Buttolph*'s holding that the "willfulness" requirement in RCW 72.09.310 is satisfied by a person acting knowingly, we conclude that the trial court did not err in denying Mr. Yefremov's proposed jury instruction.

ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Yefremov argues defense counsel provided ineffective assistance because he failed to object to CCO Taylor's testimony that he had "abscond[ed]" from community custody in the past. RP at 76, 80, 89. Mr. Yefremov argues the only purpose for this testimony was to show his propensity for criminal activity and to unduly prejudice his case. For this reason, he argues the trial court would have excluded this testimony under ER 403 and ER 404(b) had defense counsel objected.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant receives ineffective assistance if the attorney's conduct (1) falls below a minimum objective standard of reasonable attorney conduct, and (2) prejudiced the defendant, i.e., there is a reasonable probability the attorney's conduct affected the case's outcome. *State v. Benn*, 120 Wn.2d 631, 663, 845 P.2d 289 (1993). Because ineffective assistance of counsel is an issue of constitutional magnitude, it may be considered for the first time on appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

"There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions in the exercise of reasonable professional judgment."

8

*Benn*, 120 Wn.2d at 665. A defendant cannot claim ineffective assistance if defense counsel's trial conduct can be characterized as legitimate trial strategy or tactic. *Id.* "The decision whether to object is a classic example of trial tactics, and only in egregious circumstances will the failure to object constitute ineffective assistance of counsel." *State v. Kolesnik*, 146 Wn. App. 790, 801, 192 P.3d 937 (2008). This court reviews ineffective assistance claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

ER 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evidence of prior bad acts is not admissible to show a defendant is a "criminal type." *State v. Brown*, 132 Wn.2d 529, 570, 940 P.2d 546 (1997). ER 403 provides that the relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Applying the strong presumption that counsel has rendered adequate assistance and has made all significant decisions in the exercise of reasonable professional judgment, defense counsel's decision not to object to CCO Taylor's testimony can be properly characterized as a strategic one. CCO Taylor made the first two references to Mr. Yefremov's multiple acts of absconding while trying to make some other point—he

9

was trying to explain why Mr. Yefremov was still under community custody in September 2015, and why Mr. Yefremov was removed from his substance abuse treatment program. Objections would have drawn the jury's attention away from the questions at hand and focused their attention on Mr. Yefremov's prior absconding offenses. By the time CCO Taylor mentioned the multiple acts of absconding a third time, the jury had already learned of them. Accordingly, even were we to assume that CCO Taylor's testimony was improper, we conclude defense counsel was not ineffective by not objecting.

Moreover, Mr. Yefremov fails to establish prejudice. He testified about his poor attendance at his supervision meetings and admitted he missed them because he knew he would test positive for drugs. Given his open discussion of his history of absconding, there is no reasonable probability that CCO Taylor's references affected the case's outcome.

Because defense counsel's trial conduct was likely tactical and Mr. Yefremov has failed to demonstrate prejudice, we conclude Mr. Yefremov's right to effective assistance of counsel was not violated.

APPELLATE COSTS

Mr. Yefremov, noting his indigent status, asks this court to exercise its discretion and not impose appellate costs in the event the State substantially prevails. The State has substantially prevailed. The State requests this court to only impose appellate costs in conformity with RAP 14.2 as amended.

RAP 14.2, recently amended, governs the award of appellate costs. The rule generally requires an award of appellate costs to the party that substantially prevails. The rule permits an appellate court, in its decision, to decline an award of appellate costs, or to direct a commissioner or clerk to decide the issue. A commissioner or clerk is precluded from awarding appellate costs if it finds that the defendant lacks the current or likely future ability to pay such costs. If a trial court earlier found that the defendant was indigent for purposes of appeal, that finding continues unless the commissioner or clerk determines by a preponderance of the evidence that the defendant's financial circumstances have significantly improved since the earlier finding.

A majority of this panel has determined that our commissioner shall decide the issue of appellate costs. In the event the State seeks an award of appellate costs, we direct our commissioner to enter an order consistent with RAP 14.2.

11

No. 34702-8-III
*State v. Yefremov*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____        _____
Korsmo, J.                                                    Siddoway, J.