# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74013-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| VINAY KESHAVAN BHARADWAJ, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: December 27, 2016 |
| | ) | |

COX, J. — Vinay Bharadwaj appeals the trial court's order denying relief from judgment under CrR 7.8. This motion was based on his most recent claim of ineffective assistance of counsel. He also argues the trial court should have ruled on his pro se motion for reconsideration. Because the trial court did not abuse its discretion, we affirm.

In 2012, the trial court found Bharadwaj guilty of child molestation in the second degree. We affirmed his judgment and sentence on appeal.[1]

---

[1] State v. Bharadwaj, Nos. 69453-7-I, 69854-1-I, slip op. at *1 (Wash. Ct. App. Oct. 27, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/694537.pdf.

In 2005, Bharadwaj became involved in a Hindu-inspired spiritual community known as the Life Bliss Foundation (the "Foundation"). He grew close to the group's leader, Swami Parahamsa Nithyananda (the "Swami") who promoted Bharadwaj to high positions of authority in the group's Redmond temple and allegedly manipulated him into sexual acts.

During this time, Bharadwaj became acquainted with the victim's family because of their deep involvement in the Redmond temple. At the family's request, Bharadwaj helped tutor their 13 year-old daughter S.M. During this time, he would call S.M. frequently and ask her private questions, which made her uncomfortable. Their contact soon became sexual.

In 2009, Bharadwaj began to withdraw from the Foundation. He avoided the Swami's sexual advances and confronted him about issues in the community. Eventually, Bharadwaj came to believe that the group was a cult and fled.

In 2010, Indian authorities arrested the Swami and contacted Bharadwaj, asking him to testify against his former leader.

Soon after, S.M.'s family obtained a temporary restraining order prohibiting Bharadwaj from contacting S.M. S.M. then wrote an eight-page letter to her parents explaining what had happened between her and Bharadwaj. S.M.'s parents went to the police.

The State charged Bharadwaj with child molestation. Initially, an attorney named Harish Bharti represented Bharadwaj. Bharti moved to have the trial court find the Foundation's members incompetent to testify and the court denied his motion. We turn to this motion in more detail below.

Bharadwaj later moved to substitute counsel and hired John Henry Browne as defense counsel. Bharadwaj then waived his right to a jury trial. In the bench trial that followed, the judge found him guilty beyond a reasonable doubt, as charged.

Afterwards, Bharadwaj filed a CrR 7.8 motion, arguing that Browne, his trial counsel, was ineffective for failing to call certain experts who would testify that the Foundation was a cult that manipulated its members. He argued that had his counsel presented such testimony, the court would have found S.M. and other Foundation members incompetent to testify. The trial court denied that motion.

Bharadwaj appeals.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Bharadwaj argues that the trial court erred in denying his CrR 7.8 motion based on the alleged ineffectiveness of his counsel. We disagree.

CrR 7.8(b) allows a court to relieve a party from a final judgment or order based upon mistakes and inadvertence. Such grounds include the ineffective assistance of counsel.[2]

The Sixth Amendment of the United States Constitution guarantees a criminal defendant not only a right to counsel, but to counsel whose assistance is effective.[3] The Washington Constitution provides an analogous right in article 1,

---

[2] In re Pers. Restraint of Bailey, 141 Wn.2d 20, 23, 1 P.3d 1120 (2000).

[3] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

section 33.[4] The United States Supreme Court explained in <u>Strickland v. Washington</u> that the benchmark of this right is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[5] The defendant demonstrates the ineffectiveness of his counsel by meeting a two-part burden. He must first show that counsel's performance was unreasonably ineffective and, second, that such ineffectiveness prejudiced the results of his case.[6] Because he must meet both elements, we need not address both if either is found wanting.[7]

Determining whether counsel provided ineffective assistance is a mixed question of law and fact.[8] We review de novo whether a defendant received ineffective assistance of counsel.[9] In doing so, we must still accord appropriate deference to the trial court's factual determinations.[10]

First, Bharadwaj must show that his counsel's performance "fell below an objective standard of reasonableness" based on the relevant circumstances and

---

[4] <u>State v. Benn</u>, 120 Wn.2d 631, 663, 845 P.2d 289 (1993).

[5] 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[6] <u>Id.</u> at 687.

[7] <u>Id.</u> at 697.

[8] <u>State v. Jones</u>, 183 Wn.2d 327, 338-39, 352 P.3d 776 (2015).

[9] <u>Id.</u>; <u>State v. Cross</u>, 156 Wn.2d 580, 605, 132 P.3d 80 (2006).

[10] <u>Cross</u>, 156 Wn.2d at 605.

the "prevailing professional norms."[11] So long as representation was reasonable, this court should neither "interfere with the constitutionally protected independence of counsel [nor] restrict the wide latitude counsel must have in making tactical decisions."[12] Thus, we conduct this inquiry "from counsel's perspective at the time" of trial and must strongly presume that counsel's conduct was reasonably effective.[13] We must also remember that unlike us, trial counsel "knew of materials outside the record."[14]

In certain circumstances, the "failure to interview a particular witness can certainly constitute deficient performance."[15] At such times, "the only reasonable and available defense strategy requires consultation with experts or the introduction of expert evidence."[16] But whether it does so "depends on [the] reason for the trial lawyer's failure to interview."[17] "[C]hoices made after less

---

[11] Strickland, 466 U.S. at 688.

[12] Id. at 689.

[13] Id.

[14] Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

[15] Jones, 183 Wn.2d at 340.

[16] Harrington, 562 U.S. at 106.

[17] Jones, 183 Wn.2d at 340.

than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[18]

When counsel is aware of the facts supporting a possible line of defense, "the need for further investigation may be considerably diminished or eliminated altogether."[19] Often the decision whether to call a witness is a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel.[20] This presumption can be overcome "by showing counsel failed to conduct appropriate investigations to determine what defenses were available."[21] In such circumstances, the supreme court requires that counsel "investigate[] the case and ma[k]e an *informed* and reasonable decision against conducting a particular interview or calling a particular witness."[22] But when counsel and the court are already informed about the substance of particular facts, counsel need not present additional expert testimony to rearticulate them in scientific terms.[23]

---

[18] Strickland, 466 U.S. at 690-91.

[19] Id. at 691.

[20] In re Pers. Restraint of Davis, 152 Wn.2d 647, 742, 101 P.3d 1 (2004).

[21] Id.

[22] Jones, 183 Wn.2d at 340.

[23] Strickland, 466 U.S. at 699.

Bharadwaj argues that his case is similar to State v. Jones, in which the supreme court recently held counsel's performance to be ineffective.[24] We disagree.

In that case, a jury found Leroy Jones guilty of second-degree assault after he fought with another man on a public street.[25] Several members of the public witnessed the fight, including Michael Hamilton, who would have testified that Jones acted in self-defense.[26] But Jones's defense counsel never contacted Hamilton.[27] In fact, counsel testified that he "did not have any idea what Mr. Hamilton would have said about this case."[28] On this basis, the supreme court held that counsel's decision to not interview Hamilton was not informed and, thus, constituted ineffective assistance of counsel.[29]

This case is not like Jones. We presume Browne had the benefit of what the claimed experts would say if asked to testify. So informed, counsel made a reasonable decision not to further investigate the possible testimony of the relevant experts.

---

[24] 183 Wn.2d 327, 340-41, 352 P.3d 776 (2015).

[25] Id. at 331-32.

[26] Id. at 332, 334-35.

[27] Id. at 331-32.

[28] Id. at 341.

[29] Id.

We also note that Browne chose an alternative line of defense. He chose not to focus on whether the Foundation was a cult and did not dispute the State's successful motion to preclude use of the word "cult" at trial. Browne explained that his and Bharadwaj's "opinion[s] as to whether it's a cult or not is not really relevant."[30]

Instead, Browne presented witnesses who testified to the internal workings of the Foundation and the victim's family's strong allegiance to the Swami. In doing so, Browne did what Bharadwaj wished: he attacked the credibility of the State's witnesses. And he employed a different tactic to achieve the same result. This is objectively reasonable.

Bharadwaj contends that the relevant expert testimony might have strengthened Browne's tactic. But as Strickland explains, the purpose of the Sixth Amendment is not to improve the performance of constitutionally adequate counsel.[31] That Browne's choice did not succeed does not make it unreasonable. To the contrary, we hold that Browne's choice was objectively reasonable under the first prong of the governing test.

Bharadwaj argues that Browne's decision to not present the expert testimony prejudiced the result in his case. Because he did not establish the first prong of the governing test, it is not necessary to reach the second prong. In any event, we disagree with this further argument as well.

---

[30] Report of Proceedings (July 30, 2012) at 23.

[31] Strickland, 466 U.S. at 689.

A defendant seeking to overturn his conviction must also show a "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."[32] The defendant need not show that he would more likely have been acquitted than not absent the relevant error.[33] But it is not enough that counsel's ineffectiveness impaired the defense.[34] The defendant must "undermine confidence in the outcome" received at trial.[35] He must also show that the likelihood of a different result was "substantial, not just conceivable."[36]

In determining whether counsel's deficient performance prejudiced the defense, we take the trial court's findings and conclusions unaffected by the error as "given" and ask whether those findings and conclusions adequately supported the result at trial.[37]

### Hypnosis

Bharadwaj argues that, if presented, the expert testimony would have convinced the trial court to find S.M. and the other Foundation member witnesses incompetent to testify because they were functionally hypnotized. Thus, he

---

[32] Id. at 695.

[33] Id. at 693.

[34] Id.

[35] Id. at 694.

[36] Harrington, 562 U.S. at 112.

[37] Strickland, 466 U.S. at 696.

argues that Browne's failure to present such expert testimony likely prejudiced the result. We disagree.

Washington law presumes every person is competent to testify.[38] For example, ER 601 states: "Every person is competent to be a witness except as otherwise provided by statute or by court rule." The party opposing a witness bears the burden to prove incompetence by a preponderance of the evidence.[39]

A witness is incompetent if he or she "appear[s] incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly" or is of otherwise "unsound mind."[40] A witness is of unsound mind when he or she totally lacks "comprehension or the []ability to distinguish between right and wrong."[41] But a witness's mental disorders are not a manifest sign of incompetence.[42]

A hypnotized person is incompetent to testify to facts known because of hypnosis.[43] In State v. Martin, the supreme court considered the admissibility of

---

[38] RCW 5.60.020; State v. Brousseau, 172 Wn.2d 331, 341, 259 P.3d 209 (2011).

[39] Brousseau, 172 Wn.2d at 341-42.

[40] RCW 5.60.050.

[41] State v. Johnston, 143 Wn. App. 1, 13, 177 P.3d 1127 (2007).

[42] Id. at 14.

[43] State v. Martin, 101 Wn.2d 713, 722, 684 P.2d 651 (1984).

a child's testimony that the defendant had sexually abused her.[44] Initially, the child had no memory of the incident but remembered after hypnosis.[45]

The supreme court held that such testimony remembered due to hypnosis was inherently unreliable.[46] The hypnotized "witness cannot distinguish between facts known prior to hypnotism, facts confabulated during hypnosis to produce pseudomemories, and facts learned after hypnosis."[47] Such circumstances impede effective cross-examination and jury observation.

Here, Dr. Doni Whitsett declared how children in positions similar to S.M.'s experienced the equivalent of hypnosis. Dr. Whitsett described certain criteria for the study of mind control in cult-like systems. Such systems are closed and those within have "no quality control, no correction of misinformation. Thus, people who live in these groups come to believe whatever the leader wants them to believe as they have no outside information to counter it."[48]

Dr. Whitsett further stated that the effect is exaggerated for children raised within the cult who have never experienced life and thought outside. The cult bars such children from socializing with outsiders. As such, they are home schooled and kept from extracurricular activities.

---

[44] 101 Wn.2d 713, 715, 684 P.2d 651 (1984).

[45] Id. at 714.

[46] Id. at 722.

[47] Id.

[48] Clerk's Papers at 253.

Dr. Whitsett found these criteria largely met in S.M.'s case. S.M. grew up in the Foundation, loyal to the Swami. Dr. Whitsett concluded that S.M. would struggle to identify fact from instructed fiction because she was deprived of any contact with the world outside. She would be functionally hypnotized based on the reasoning in Martin.

Although Dr. Whitsett based her commentary on what appears to be sound research, she did not know all the facts of S.M.'s life. S.M. attended public middle and high schools. She interned at a hospital and hoped to attend Boston University, across the country from her immediate family and the Swami's closest control. Thus, while Dr. Whitsett may very well identify a complex of mind control analogous to hypnotism, it appears unmet in S.M.'s particular case. Bharadwaj fails in his burden to overcome the presumption of competency under the law. Thus, the failure to present this expert testimony did not prejudice the trial result.

*ER 610*

The State presents another serious issue with Bharadwaj's brainwashing-as-hypnosis argument. It argues that ER 610 would bar admission of the expert testimony. We agree.

ER 610 bars admission of "[e]vidence of the beliefs or opinions of a witness on matters of religion . . . for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced."

Here, Bharadwaj sought to admit expert testimony as to S.M.'s and the other Foundation members' beliefs towards their group and the Swami. By its broadest terms, ER 610 appears to exclude such evidence.

Bharadwaj contends that his experts would testify to bias, not belief, and that ER 610 does not bar such testimony. State case law on this rule is unfortunately slim. But ER 610 closely tracks the language of Federal Rules of Evidence (FRE) Rule 610. That rule includes the very exception Bharadwaj asks this court to erect—inquiry into religious beliefs "for the purpose of showing interest or bias because of them."[49]

The Seventh Circuit Court of Appeals considered religious bias in United States v. Hoffman.[50] David Hoffman was a member of Sun Myung Moon's Unification Church who had threatened to kill President Ronald Reagan for incarcerating Reverend Moon.[51] He challenged the prosecution's evidence that he was a member of the organization and loyal to Reverend Moon, arguing that such evidence put him in a bad light because "many Americans look askance on their fellow citizens who join such cult style eastern religions."[52] While Hoffman did not raise a FRE 610 challenge, the dissent noted such concerns.[53] The majority explained that such evidence went to Hoffman's motive and not to whether his religious belief and membership were respectable.[54]

---

[49] FED. R. EVID. 610 advisory committee's note.

[50] 806 F.2d 703 (7th Cir. 1986).

[51] Id. at 709.

[52] Id. at 708.

[53] Id. at 716 (Will, J., dissenting).

[54] Id. at 709.

By contrast, the Second Circuit Court of Appeals concluded in United States v. Teicher that a witness's opposition to testifying against his coreligionists was a belief rather than bias within the terms of FRE 610.[55] It based this conclusion on the witness's explanation that it was a "cardinal" belief of his Judaism that "Jews aren't supposed to turn other Jews over."[56] The distinction between Hoffman and Teicher is one between a mere fact of organizational membership and a belief arising out of that membership.

Here, similarly to Hoffman, Browne presented evidence that S.M. and her family were members of the Foundation and loyal to the Swami. The trial court recognized that the alleged cult's influence on the "truthfulness of the testimony of each cult-member witness was directly before the finder of fact, and was weighed in assessing the truthfulness of the testimony."[57]

This is distinct from evidence as to S.M.'s belief in the Swami's divinity or her possible religious obligations to him and the group. Bharadwaj would have S.M. deemed incompetent because of the Foundation's religious beliefs and theology of leadership. The trial court found such a "blanket rule" untenable. Such evidence of religious belief is inadmissible in federal court under FRE 610. It is more clearly inadmissible in state court under ER 610, which lacks the exception in the federal rule.

---

[55] 987 F.2d 112, 119 (2d Cir. 1993).

[56] Id.

[57] Clerk's Papers at 185.

*Impeachment*

Bharadwaj next argues that even if the trial court allowed the cult members to testify, counsel could have presented expert testimony to impeach their testimony. We disagree.

"Impeachment evidence is especially likely to be material when it impugns the testimony of a witness who is critical to the prosecution's case."[58] In considering whether the absence of particular impeachment evidence prejudiced the defendant, we must consider whether its presence would have destroyed confidence in the original result.[59]

Here, the trial court concluded that the claimed experts' declarations would not have changed its findings of fact. Bharadwaj argues such a conclusion is not sustainable because Bharadwaj's guilt rests on whether S.M. was lying for the Swami. But the trial court reviewed evidence of the "influence of the cult on the truthfulness of the testimony of each cult-member witness."[60] S.M. admitted at trial that she would lie if necessary for the Swami and that she wore a necklace with his photograph. The trial court reviewed such evidence as well as the possible effect the expert testimony might have had and determined S.M. to be credible. Similarly, the trial court found the evidence of a "scheme to discredit

---

[58] Silva v. Brown, 416 F.3d 980, 987 (9th Cir. 2005).

[59] Strickland, 466 U.S. at 694.

[60] Clerk's Papers at 185.

the defendant" unconvincing. The court, having considered the import of the declarations, did not deviate from this finding.

Here, unlike a jury trial, we have the benefit of the trial judge's express credibility determinations. The trial court found S.M. "very credible" and that she told "the truth in her testimony as to her relationship with the defendant." The trial court based this finding in part on S.M.'s "demeanor on the stand" which was "natural, that she responded in the way one would expect of a sexual assault victim of her age, that she consistently gave details in a matter not consistent with being coached in relation to an elaborate conspiracy theory. By contrast, the trial court disbelieved Bharadwaj's account of events, finding him guilty beyond a reasonable doubt.

We thus conclude that absence of the claimed expert testimony did not prejudice the result at trial.

## MOTION FOR RECONSIDERATION

Lastly, Bharadwaj argues that we should remand for a decision on his pro se motion for reconsideration of the denial of his CrR 7.8 motion. Because there was no abuse of discretion in deciding this untimely motion, we disagree.

We review for abuse of discretion a trial court's disposition of a motion for reconsideration.[61]

Bharadwaj fails in his burden to show any abuse of discretion. His motion for reconsideration was untimely. He moved for relief more than 10 days after

---

[61] State v Englund, 186 Wn. App. 444, 459, 345 P.3d 859, review denied, 183 Wn.2d 1011 (2015).

16

the court's denial of his CrR 7.8 motion. The Criminal Rules do not address motions for reconsideration. But the State correctly cites the 10 day limitation specified in CR 59 as the proper analog. We agree and conclude that the 10 day limitation applies to the untimely pro se motion for reconsideration, made when Bharadwaj was then represented by counsel.

We affirm the order denying the CrR 7.8 motion.

_____
Cox, J.

WE CONCUR:

_____
_____